Murray v. City of Omaha.

---

## THOMAS MURRAY V. CITY OF OMAHA ET AL.

FILED NOVEMBER 6, 1902. No. 12,197.

Commissioner's opinion, Department No. 2.

1. **Municipal Corporations: TORTS: ACT OF INDEPENDENT BOARD.** A municipal corporation is not liable for the torts of an independent board, constituted by the charter or by general law to perform some public service from which the municipality derives no special advantage in its corporate capacity, even though the duties imposed on such board might have been imposed upon the municipality, and its members are appointed by the municipal government under the provisions of the charter or law.

2. **Act of Independent Board: RATIFICATION.** Nor is the municipality to be held liable for the acts of such a board on the ground that it ratified and adopted them, where the matters involved are not within the scope of the powers conferred on it by the charter, but are expressly confided to the board.

---

ERROR from the district court for Douglas county. Action in trespass for the tearing down a building as a nuisance under municipal ordinance. The facts appear in the opinion. Tried below before BAXTER, J. Judgment for defendants. Plaintiff brings error. *Affirmed.*

*I. J. Dunn,* for plaintiff in error

*W. J. Connell* and *James H. Adams, contra.*

POUND, C.

This is an action against the city of Omaha and the members of the board for the inspection of buildings, appointed under its charter, to recover for the alleged wrongful tearing down of certain frame buildings condemned by the board as nuisances under provisions of a municipal ordinance. The principal contest was as to the liability of the city, and as no other question is argued in the plaintiff's briefs, we are concerned with that aspect of the case only. Section 36 of the act of 1893* for the government of cities of the metropolitan class, which was in force at the time of the occurrence out of which this case arose, gave the mayor and council power to provide for fire-limits; to provide for the removal of buildings erected contrary to fire-limit regulations; to provide that buildings within such limits, which had become dangerous by reason of decay, be removed, and to assess the cost of removal upon the land, or to collect it from the owner personally. While the language used is somewhat ambiguous, taken in connection with section 107 of the same act, we think it was intended to give the mayor and council power to provide general rules upon these subjects by ordinance. Section 107 provided that in every city of the metropolitan class there should be a board for the inspection of buildings, which should "have charge of the enforcing of all ordinances pertaining to party walls, or the erection, con-

* Compiled Statutes, 1893, ch. 12a.

struction, alteration, repair, or removal of buildings." In other words, the power to make rules on such subjects was left to the city; the power to apply, execute and enforce them was intrusted to this board. The statute also provided that the principal and executive officer of the board should be an inspector of buildings, and the city authorities, evidently construing the statute as we have done, provided, in the ordinances shown in evidence, certain general rules for carrying out the powers given by section 36, and left their execution to that officer. The contention of the plaintiff is that the provisions of the ordinance as to the mode of procedure in removing a dangerous building were not strictly adhered to, and that for such reason' the defendants became liable. A verdict for the defendants was directed in the trial court, and the plaintiff has come here by petition in error.

We are of opinion that the city was not liable for the manner in which the board for the inspection of buildings exercised its office. The execution of laws and ordinances as to the erection, repair and removal of buildings was given expressly, not to the city, but to this board. The board was not under the control of the city government, but exercised its own discretion. It could not be ordered to condemn or remove this or that building. All the city could do was to enact ordinances providing general rules. When these were enacted, their execution and application was left to the board. The city did not enforce them. As the board was the creature of the statute, and exercised powers derived from the state, not from the city, we do not see how it can be said to represent the municipality so as to make the latter liable for its wrongful acts. The individual members are the persons to proceed against, not the city. As a general rule, a municipal corporation is not liable for the torts of an independent board, constituted by the charter or by general law to perform some public service from which the municipality derives no special advantage in its corporate capacity, even though the duties imposed on such board might have been imposed

upon the municipality, and its members are appointed by
the municipal government under the provisions of the
charter or law. 1 Beach, Public Corporations, sec. 740;
Williams, Municipal Liability for Tort, secs. 16, 17; 20
Am. & Eng. Ency. Law [2d ed.], 1203. In such case the
board represents the state and exercises its sovereignty;
it is not an agent of the municipality. That the duties
confided to the board in question were for the interest
of the general public and might equally well have been left
to a board appointed by the state government, or even to a
state officer, is illustrated by other provisions in our laws.
Not to mention the various statutes which are or have
been in force providing for appointment of fire and police
commissions by the governor, and giving such boards ex-
tensive powers in municipal affairs, section 15, chapter
30, Compiled Statutes,* 1901, puts the execution of the
laws as to fire-escapes in the hands of the state. This is
a matter of general public concern of the same nature as
the condemnation and removal of dangerous, decayed and
inflammable structures; and it is obvious that in either
case the police power of the state is exercised, and the
authority which the state sets up to wield that power
represents the sovereignty of the state. Such has been the
general course of decision with respect to boards so con-
stituted. *Bryant v. City of St. Paul,* 33 Minn., 289, 23 N.
W. Rep., 220; *McGinnis v. Inhabitants of Medway,* 176
Mass., 67, 57 N. E. Rep., 210; *Gilboy v. City of Detroit,*
115 Mich., 121, 73 N. W. Rep., 128; *Mead v. City of New
Haven,* 40 Conn., 72, 16 Am. Rep., 14. In *Bryant v. City
of St. Paul,*—a case in which responsibility for the acts
of a board of health, composed of the city engineer, city
physician and four members of the city council, was in
question,—the court said: "The duties of such officers
are not of that class of municipal or corporate duties with
which the corporation is charged in consideration of char-
ter privileges, but are police or governmental functions,
which could be discharged equally well through agents

---

* Cobbey, Annotated Statutes, sec. 6359.

appointed by the state, though usually associated with and appointed by the municipal body. The nature of the duties as public are the same in either case." In *McGinnis v. Inhabitants of Medway, supra,* it was held that the municipality was not liable for the acts of a liquor-licensing board consisting of the selectmen of a town. In *Mead v. City of New Haven, supra,* the city, under power conferred by its charter, appointed an inspector of steam boilers and provided through a by-law that no one should use such a boiler until it had been tested by the inspector. It was held that the city was not liable for negligence of such inspector, the court saying: "The city must, we think, be regarded as the agent of the government, and acting for the state and not for itself in making the appointment of inspectors, and therefore not liable for the inspector's negligence." It can make no difference that the board was charged with the enforcement of municipal ordinances. The same is true of police commissions, excise boards, boards of health, and the like, as to which it is settled no liability attaches to the municipality. The ordinances which the board was constituted to carry out were enacted under authority of the state in furtherance of the police power of the state. The matters provided for might have been covered by general statute, and put in charge of general state officers, had the legislature so preferred.

It is contended that the city should be held for the reason that it afterwards ratified and adopted the wrongful acts of the board. The acts in question were not within the scope of the authority of the general municipal officers, and we do not see how they could do by ratification what the statute confided to other and independent officers. The enforcement of building ordinances was for the board, not the city, and the city could not enforce them by adoption or ratification, any more than in the first instance. *Calwell v. City of Boone,* 51 Ia., 687, 2 N. W. Rep., 614, 33 Am. Rep., 154; *Peters v. City of Lindsborg,* 40 Kan.,654, 20 Pac. Rep., 490. In *City of Omaha v. Croft,* 60

Nebr., 57, the acts complained of were in the line of the city's authority, and done by virtue of an ordinance providing therefor. The city had the power to do them in the first instance, and could ratify and adopt them when done by others.

We recommend that the judgment be affirmed.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

