MATTIE SHEETS, APPELLANT, v. CITY OF McCOOK, APPELLEE.

FILED JANUARY 30, 1914. No. 17,528.

Municipal Corporations: LIABILITY: OBSTRUCTION OF STREET. Neither the city nor the officers of its board of health are liable for damages sustained by reason of acts committed in the exercise of police power for the benefit of the public health and safety; but, if in the exercise of such powers such officers place a rope barrier across a public walk or street, which becomes and remains in a defective and dangerous condition, and the city either has actual notice of the defect or it has existed for such a length of time as that notice will be presumed, the city may, if the facts in the case warrant, be held liable for its negligence in leaving the walk in an unsafe and dangerous condition.

APPEAL from the district court for Red Willow county: ROBERT C. ORR, JUDGE. Reversed.

C. D. Ritchie, for appellant.

C. E. Eldred, contra.

LETTON, J.

In June and July, 1910, there was an epidemic of scarlet fever in McCook. A number of houses were quaran-

tined, and, in order to prevent the further spread of the disease, the city authorities caused ropes to be stretched, extending from the porch of one of the quarantined houses across the sidewalk to posts or stakes driven at the edge of the curb, a distance of about 22 or 23 feet. Two ropes were placed at each side of the house; the lower being about 30 inches, and the upper about 4 feet high. The witnesses for the city testify that the ropes were stretched tight when put up, and were afterwards tightened twice; but it is shown that the stakes or posts at the curb were not in any manner braced. On Saturday, July 18, 1910, the plaintiff, a young married woman 24 years old, then about six months gone in pregnancy, while walking on the sidewalk about 8 o'clock in the evening, tripped and fell over one of the ropes. She testified it struck her about half-way between the ankle and knee, and that she did not know what tripped her until after she had fallen, when she discovered the rope. She makes no mention of seeing two ropes at that point. She finished her errand and returned to her home. Some time on Sunday or Sunday night, under peculiar circumstances, she gave premature birth to a still-born child. In the petition she alleges that the city knowingly and negligently permitted the sidewalk at the place where she fell to remain obstructed, with full knowledge of the dangerous condition; that it neglected to place a light upon the rope or any warning to passers-by, and that the sidewalk had remained in that condition for a long time. The defendant's answer is a general denial, and a plea of contributory negligence. At the close of the testimony defendant moved the court for a directed verdict in its favor, which was sustained, and judgment of dismissal rendered. Plaintiff appeals.

The testimony showed that the ropes were placed across the sidewalk in the latter part of June or early in July by one of the city policemen at the direction of Dr. Hare, who was a member of the board of health and city physician. The plaintiff's position is that the city negligently failed to perform its duty to exercise reason-

able care in keeping its sidewalks free from danger, both by the act of commission in placing the rope across the walk, and by its omission to warn foot-passengers either by lights, barrier, or otherwise, and by suffering the rope to sag so as to make it dangerous. The city asserts that the stretching of the ropes was performed by officers of the board of health, in the exercise of the police power, for the protection of the public health and safety, and that it is not responsible for negligent acts on the part of the board of health or of any of its officers or employees.

The ordinances of the city provide that the mayor, the city physician, the president of the city council, and the city treasurer shall constitute the board of health. They are empowered to make all needful rules and regulations relating to matters of health and sanitation in the city, and to enforce the laws of the state and the ordinances of said city in relation to such matters. The city marshal is created the health officer, with the usual powers of such official.

The board of health of the city and its officers had the right under the health ordinance to erect barriers to prevent the approach of others than the physician within nearer than 30 feet of the house. The plaintiff, while conceding that no damages are recoverable from the city which were caused by the quarantine itself, contends that the injuries which plaintiff suffered were not caused by or derived from the quarantine, but from the neglect of the city to see that its sidewalks were kept reasonably safe. The defendant insists that the rule is broader, and that the city is not liable for any negligent acts on the part of health officers, and that their act was the cause of the injury. We have held that no damages can be recovered against a city or village arising from the placing of a quarantine, for the reason that the acts of the health officer are public and governmental, and are not corporate in character. *Village of Verdon v. Bowman*, 5 Neb. (Unof.) 38. The same principle is laid down in *Murray v. City of Omaha*, 66 Neb. 279, where the facts were that certain old buildings were torn down by employees of a

board of building inspection, and the city was held not liable. Perhaps as clear a statement of the principle as we have seen may be found in the case of *Love v. City of Atlanta*, 95 Ga. 129, 51 Am. St. Rep. 64. The facts were that a small negro boy driving a fractious mule was employed by the city in the removal of garbage under the direction of the board of health; that the mule ran away, collided with the plaintiff's buggy, and caused serious injuries. The court say: "In the discharge of such duties as pertain to the health department of the state, the state is acting strictly in the discharge of one of the functions of government. If the state delegate to a municipal corporation, either by general law or by particular statute, this power, and impose upon it within its limits the duty of taking such steps and such measures as may be necessary to the preservation of the public health, the municipal corporation likewise, in the discharge of such duty, is in the exercise of a purely governmental function, affecting the welfare, not only of the citizens resident within its corporation, but of the citizens of the commonwealth generally, all of whom have an interest in the prevention of infectious or contagious diseases at any point within the state, and in the exercise of such powers is entitled to the same immunity against suit as the state itself enjoys"—and humorously ends the opinion with the remark: "However incongruous it may appear to be to say that this diminutive darkey and this refractory mule were engaged in the performance of some of the functions of government, it is nevertheless true, and illustrates how even the humblest of its citizens, under the operation of its laws, may become in Georgia an important public functionary." *Watson v. City of Atlanta*, 136 Ga. 370; *Evans v. City of Kankakee*, 231 Ill. 223; *Valentine v. City of Englewood*, 76 N. J. Law, 509; *Ogg v. City of Lansing*, 35 Ia. 495.

This principle requires no further discussion. The city, however, is charged with the duty of exercising reasonable care to keep its sidewalks in reasonably safe condition for public travel. This is a duty which it must per-

form regardless of the person by whom the dangerous condition of the sidewalk is created. Neither the city nor the officers of its health department are liable for the negligent acts of such officers committed in the enforcement of the provisions for the public health; but, while the city may not be liable on account of these acts, it may be liable for its neglect of an undelegable duty committed to it. Can it with reason be said that, if a trap had been set upon a sidewalk and had been maintained there for such a length of time that the city authorities must be presumed to have notice of it, the city would not be guilty of negligence in failing to remove the trap, even though it had been placed there by a person for whose act it could not be held responsible? In this case the ropes had extended across the walk for several weeks before the plaintiff fell, and apparently long enough for the city authorities to have acquired knowledge of the existence of the unsafe condition by whomsoever placed. No effective barrier was placed against travel on the sidewalk, and no lights or other warnings were so displayed as to bring the rope to the knowledge or notice of one passing in the dusk or dark. We think it would be unreasonable to hold that a city might with impunity allow such obstructions to remain upon its walks. This view seems to be in accordance with that of other courts where an almost identical question was presented.

In *Village of Barnesville v. Ward,* 85 Ohio St. 1, the facts were that the plaintiff tripped over a low-hanging wire placed between the sidewalk and the curb for the purpose of protecting the grass and trees upon the parking. The court held that the city might properly for the public good maintain park strips between the sidewalk and the curb, and might construct proper barriers to prevent travel thereon, and that one could not complain if he had collided with a tree or a proper barrier, but that this would not authorize the city to maintain a wire in such a condition as to become dangerous; that "if a pedestrian, in the exercise of due care for his own safety, is injured by reason of the dangerous or defective condition of the

barrier, the municipality is liable in damages for such injury, if it be shown that it knew, or in the exercise of ordinary care should have known, the dangerous condition thereof." To the same effect is *City of Paducah v. Simmons*, 144 Ky. 640, where the facts were substantially identical; *City of Covington v. Whitney*, 30 Ky. Law Rep. 659, 99 S. W. 337; *City of Glasgow v. Gillenwaters*, 113 Ky. 140.

In *McDonald v. City of St. Paul*, 82 Minn. 308, where the facts were similar to *Village of Barnesville v. Ward, supra,* the court held that the city is not bound to use due care to keep the parked portion of the streets free from obvious obstructions, although they may endanger the safety of travelers thereon, but that, "while this is true, yet the municipality has no right to maintain, or permit others to do so, on its boulevards, and especially on those at the street corners, anything in the nature of a dangerous pitfall or trap, or snare, or like obstruction, whereby the traveler, yielding to the impulse of the average person to cut across the corner when in a hurry, may be injured."

In *Carrington v. City of St. Louis*, 89 Mo. 208, in a case where a police officer negligently left an obstruction in a street, the court, after stating the rule of non-liability for acts of officers exercising governmental or police functions, say: "But we do not see how these principles of law can aid the defendant here, for it is the unquestioned duty of the city to keep its streets and sidewalks in a reasonably safe condition for persons traveling thereon, and it is liable in damages to one injured by reason of negligence in this behalf." *Shinnick v. City of Marshalltown*, 137 Ia. 72. Temporary obstructions in a street are often lawful or permissible; but, as said by Judge Dillon: "This will never justify the leaving of the street or way in an unsafe and dangerous condition, or its use in an unreasonable manner or for an unreasonable time." 3 Dillon, Municipal Corporations (5th ed.) sec. 1168.

Plaintiff was not engaged in an unlawful act at the time she fell, because she had no knowledge of the

existence of the quarantine or of the obstruction to the walk. If the barrier had been seen, or had it been effective and sufficient, the accident could not have happened as she testifies.

There is no doubt that the original obstruction of the street by the ropes was authorized, and not unlawful; but it is equally free from doubt that the city had a continuing duty to protect travelers upon the walk from hidden obstructions, if such existed, by means of a light or other warning. The liability of the city, if any, is not by reason of the placing of the ropes, but it is by reason of its negligence in failing to warn pedestrians of the dangerous situation created by the sagging rope. Nothing that is said here is to be taken as expressing any opinion upon the facts in the case, but only upon the legal questions presented. We think the questions whether the city had, or was charged with, notice of the defect in the barrier, and whether it was negligent with respect to the care of its sidewalks, together with all the other issues in the case, should have been submitted to the jury under proper instructions, and that it was erroneous to direct a verdict for the defendant.

The judgment of the district court, therefore, is reversed and the cause remanded for further proceedings.

REVERSED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.