[No. 23150.   Department One.   September 17, 1931.]

PETER GERRITSEN, *by John Gerritsen, his Guardian ad litem, Respondent,* v. THE CITY OF SEATTLE, *Appellant,* SEATTLE SCHOOL DISTRICT No. 1, *Defendant.*[1]

A. C. Van Soelen, C. C. McCullough, and Walter L. Baumgartner, for appellant.

Philip Tworoger and A. L. Maslan, for respondent.

PARKER, J.—The plaintiff, a minor, by his guardian *ad litem,* commenced this action in the superior court

[1]Reported in 2 P. (2d) 1092.

for King county, seeking recovery of damages for personal injuries suffered by him alleged as the result of the negligence of the defendants city and Seattle school district No. 1, as follows:

"That on the 4th day of October, 1929, plaintiff was riding a motorcycle, and coming down along East Union street going in a westerly direction, the plaintiff being on the north side of East Union street, that being the right-hand side of the said East Union street for traffic in a westerly direction. That he was going along carefully at the rate of about fifteen miles an hour, and in the exercise of due care. That the defendants, the city of Seattle, and Seattle school district No. 1, acting jointly, had stretched a chain across the said East Union street from the sidewalk on the north side of the street to the sidewalk on the south side of said East Union street, without putting up any warning, either in the nature of a signal or having some one there to warn vehicles going along said East Union street. That the plaintiff, in the exercise of due care in coming along said East Union street, was unable to see the said chain, and as the result thereof ran into the said chain with such great force and violence that he was thrown from his motorcycle into the street, receiving the following injuries: . . . . "

The city and school district each denied negligence on its part, and alleged negligence on the part of the plaintiff as the proximate cause of his injury. The cause proceeded to trial in the superior court, sitting with a jury, at the conclusion of which the jury found for the plaintiff and against the city, awarding to him recovery against the city in the sum of $750; and also found for the school district and against the plaintiff, denying to him recovery against the school district. The city then moved the court for judgment in its favor notwithstanding the verdict rendered against it, and also moved the court to arrest the entry of judgment against it,

". . . because the jury returned its verdict herein in favor of the co-defendant, Seattle school district No. 1, said verdict so returned being in law a bar to the entry of any judgment in this cause against the defendant, the city of Seattle."

The court denied these motions, and rendered judgment in favor of the plaintiff and against the city in the sum of $750 as found by the jury. From this disposition of the cause, the city has appealed to this court.

The principal contention here made in behalf of the city is that it is entitled to have the court refrain from entering any judgment against it upon the verdict of the jury rendered against it because of the verdict of the jury exonerating the school district, and is entitled to a judgment of dismissal.

The facts disclosed by the evidence touching this contention may be summarized as follows: The school district maintains, for primary and grammar grade pupils, a schoolhouse and grounds occupying the block bounded on the east by Summit avenue, on the north by Pike street, on the west by Crawford place, and on the south by East Union street. The area of the block, aside from the portion occupied by the school building, offers a limited area for playground for the pupils.

The city authorities granted to the school district, upon request made in its behalf, the privilege of closing to vehicle traffic the roadway portion of Union street adjoining the school block on the south between the west line of Summit avenue and the east line of Crawford place during recess play periods of the school, which continued approximately from ten a. m. to two p. m., that is, the play periods of the different grade pupils during school days; this to enable the pupils to safely play in that portion of Union street during those play periods. The city left entirely to the school

district the furnishing, placing and removal of appropriate barriers and warning signs evidencing the closing of the street during those periods. This the district did, the city doing nothing to that end other than granting such privilege to the district.

The district furnished heavy iron upright standards set in heavy iron bases to place in the middle of the street; also wooden posts permanently set in the parking near the curb on each side of the roadway, and also heavy chains to run from post to post, and to attach to the iron standards in the middle of the street. On top of each of these standards, about five or six feet above the pavement, there was a horizontal metal, elliptically shaped sign about fifteen inches long horizontally and about ten inches wide, on which, in large, plain letters, appeared the words "Street Closed." It had been the custom of the district to put and keep these chains and iron standards in place during the play periods only, and at all other times to store them in its school building.

The plaintiff was, at the time he was injured, about seventeen years old. He was then employed by a messenger company, carrying messages and parcels about the city. In this work he rode a motorcycle. His employer's place of business was in the business portion of the city a considerable distance westerly from the place of the accident. His home was some considerable distance east of the place of the accident. He could go and come between his home and his employer's place of business either along Pike street or along Union street. It was his custom to go home for lunch a little after noon, returning to his employer's place of business in about a half or three-quarters of an hour.

On the day in question, he started home to lunch about 1:15 p. m., going along Pike street, doing so,

as he said, "because the chain is stretched across the street and the kids are in that street." After lunch, he returned along Union street and arrived at Summit avenue at about 1:45 p. m., when he ran against the chain, which was then in its usual place across Union street along the west line of Summit avenue. So far the facts are undisputed. The plaintiff testified, in substance, that, while the chain was in place when he ran against it, there was then no sign there, and that no children were then at play in Union street, and that the sun shining in his face prevented him from seeing the chain. There was other testimony that the sign was then there, and that the chain was visible, as usual, during play periods.

Thus, there appears to have been such showing that the question of negligence in the maintaining of the barrier and notice thereof, and also the question of the plaintiff's contributory negligence, were for the jury to decide.

■ We have noticed that the complaint charges the alleged negligence causing plaintiff's injury to have been committed jointly by the city and the school district, this manifestly with a view of holding both of them liable as ordinary joint tort feasors. However, the evidence conclusively shows that the physical acts of closing the street and maintaining the barriers and notice thereof were the acts of the district alone. If there was any negligence in the doing or failing to do any of those physical acts incident to the safe closing of the street, it was primarily the negligence of the district. The city's negligence, if any, was necessarily only derived or imputed from the negligence of the district, if any. If the district was not negligent, as the jury, of course, found by its verdict exonerating the district, then it seems plain to us to necessarily follow that the city cannot be held liable to the plain-

tiff upon the ground of his being injured as the result of the city's negligence.

The law as announced in our much cited decision of *Doremus v. Root,* 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649, it seems to us, is conclusive here. In that case, the active negligence upon which the claim of recovery made by the plaintiff, Doremus, was rested was that of the defendant Root, the servant and employee of the defendant railroad company. The jury by their verdict exonerated Root, and at the same time awarded recovery against the defendant railroad company. The railroad company moved the court to arrest entry of judgment against it, in substance as the city did in this case. It was held, on appeal to this court, that the railroad company was entitled to have entry of judgment against it arrested and the case dismissed; this upon the theory that, Root being the sole actor and by the verdict of the jury being exonerated, and the railroad being liable, if at all, only by reason of Root's negligence, if any, it was necessarily exonerated when Root was exonerated.

This view of the law was adhered to in *Stevick v. Northern Pac. R. Co.,* 39 Wash. 501, 81 Pac. 999, *Morris v. Northwestern Imp. Co.,* 53 Wash. 451, 102 Pac. 402, and *Sipes v. Puget Sound Elec. R.,* 54 Wash. 47, 102 Pac. 1057.

Counsel for the plaintiff argue, as we understand them, that the law, as announced in those decisions, is not applicable here because it is only applicable as between master and servant under the doctrine of *respondeat superior.* It is true those are master and servant cases, but we are unable to see that the rule of those decisions is so restricted in its application. That the rule is not so restricted is well illustrated by the decision of the supreme court of appeals of Virginia in *Sawyer v. City of Norfolk,* 136 Va. 66, 116

S. E. 245. That was an action by Sawyer against the city and a partnership trading under the name of Puritan Restaurant, for injuries occurring to him by a door of the restaurant swinging outward over the sidewalk in the street and becoming an obstruction to pedestrians thereon. The jury exonerated the restaurant partnership and, at the same time, awarded recovery against the city. Holding that the verdict exonerating the restaurant partnership, it being the one actually so maintaining the door, necessarily exonerated the city, Judge Prentis, speaking for the court, said:

"The precise effect of a judgment on the merits, in favor of a party charged with negligence on the liability of a codefendant for the same act of negligence, appears never to have been raised in this jurisdiction. It is closely related to the question of *res adjudicata,* and is governed by the same principle. Where there has been litigation which has in fact determined the point in controversy and there has been a final judgment, that judgment is conclusive. Where the subject matter is identical and the evidence is of necessity the same, the question cannot be reopened."

And then, after noticing a number of decisions touching the question of the *res judicata* effect of a prior judgment in a prior action exonerating the actor, to support by way of analogy the court's holding, the learned judge concluded:

"It is manifest here that as the defendants, the Puritan Restaurant, have been acquitted of any actionable negligence out of which the injury of the plaintiff arose, the city of Norfolk cannot be held liable therefor, because its liability is derivative and under the facts of this case depends upon the alleged specific negligence of the Puritan Restaurant. This issue having been judicially determined adversely to the plaintiff, the city is not liable for his injuries which he alleges were thereby caused."

Among the numerous decisions touching the *res judicata* effect in harmony with this conclusion, we note the following which deal with situations wholly outside of the relation of master and servant: *Hill v. Bain,* 15 R. I. 75, 23 Atl. 44, 2 Am. St. 873, cited and quoted from in support of our conclusion in *Doremus v. Root,* 23 Wash. 710, 719; *Portland Gold Mining Co. v. Stratton's Independence,* 158 Fed. 63, 16 L. R. A. (N. S.) 677; *City of Anderson v. Fleming,* 160 Ind. 597, 67 N. E. 443, 66 L. R. A. 119; *Betor v. City of Albany,* 184 N. Y. S. 44; *McFaddin, Wiess & Kyle Land Co. v. Texas Rice Land Co.,* 253 S. W. (Tex. Civ. App.) 916; *Brobston v. Borough of Darby,* 290 Pa. 331, 138 Atl. 849, 54 A. L. R. 1285. See, also, 34 C. J. 988.

Counsel for the plaintiff cite and rely in some measure upon the following of our own decisions: *Birkel v. Chandler,* 26 Wash. 241, 66 Pac. 406; *Jones v. Seattle,* 51 Wash. 245, 98 Pac. 743; *Nelson v. Bromley,* 55 Wash. 256, 104 Pac. 251; *Thoresen v. St. Paul & Tacoma Lumber Co.,* 73 Wash. 99, 131 Pac. 645, 132 Pac. 860; *Knudson v. Bockwinkle,* 120 Wash. 527, 208 Pac. 59; *Fleming v. Red Top Cab Co.,* 133 Wash. 338, 233 Pac. 639; *Jackson v. Mitsui & Co.,* 138 Wash. 124, 244 Pac. 385; *Miller v. Alaska Steamship Co.,* 139 Wash. 207, 246 Pac. 296.

A critical reading of these decisions, it seems to us, discloses that none of them is controlling in our present inquiry. They are either cases not involving derivative or imputable negligence, or are cases wherein there is no finding or determination exonerating the actor. If this action had been brought against the city alone and a general verdict had been returned against it, unaccompanied by any finding as to the negligence of the school district, the actor, our problem would be different.

It is argued in behalf of the plaintiff that the city had no power to authorize the closing of the street by the district, and that the city thereby authorized the district to create a nuisance in the street. It seems to us that the public purpose for which the street was authorized to be temporarily closed during the play periods and the manifest public convenience and benefit thereby served, call for the conclusion as a matter of law that the city did not authorize the creation of a nuisance in the street by the district. *Simon v. City of Atlanta,* 67 Ga. 618, 44 Am. Rep. 739; *Anderson v. Mayor, etc.,* 2 Del. (Pennewill's) 28, 43 Atl. 841; *Sheets v. City of McCook,* 95 Neb. 139, 145 N. W. 252; *City of Lawrenceburg v. Lay,* 149 Ky. 490, 149 S. W. 862, 42 L. R. A. (N. S.) 480, Ann. Cas. 1914A 1194; *Owens v. Town of Atkins,* 163 Ark. 82, 259 S. W. 396, 34 A. L. R. 267; 13 R. C. L. 224.

So we conclude that the city is not liable to the plaintiff, independent of negligence on the part of the school district, in its manner of closing the street and guarding such closing. The jury having found that the district was not negligent in that respect, the city, we are of the opinion, was necessarily also not negligent in that respect.

We note that the plaintiff has not in any manner challenged the verdict of the jury exonerating the school district from liability, and does not seek a new trial as against the school district.

We finally conclude that the judgment awarding to the plaintiff recovery against the city must be reversed and the action dismissed. It is so ordered.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MAIN, JJ., concur.