[No. 19078. Department One. May 15, 1925.]

MARTIN C. PETERSON *et al.*, *Respondents*, v. YAKIMA COUNTY, *Appellant*.[1]

DEEDS (46-1)—CONSTRUCTION—RESERVATIONS—INTENT OF PARTIES —EVIDENCE—SUFFICIENCY. Findings, on conflicting evidence, that "improvements" in a reservation clause in a right of way deed, drawn by an inexperienced scrivener, referred to shade "trees" on the outer edge of the land, under an express agreement of the parties that the trees should be permitted to stand, are sustained, where there was nothing else on the land to which the term could apply.

HIGHWAYS (34, 35)—CONSTRUCTION BY STATE—DAMAGES—LIABILITY OF COUNTY—STATUTES. The state highway department is made the agent of a county, the grantee of land acquired for a state road to be built with state and county money and Federal aid, where the county placed the construction under the supervision and control of the state highway commissioner, pursuant to Rem. Comp. Stat., § 6833; and the county is therefore liable in damages for breach of a reservation in the right of way deed prohibiting the removal of shade trees at the outer edge of the road.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered July 8, 1924, upon findings in favor of the plaintiffs, in an action for damages to real property, tried to the court. Affirmed.

*Sydney Livesey* and *Olaf Sandvig*, for appellant.

*Bonsted & Ivy*, for respondents.

[1]Reported in 236 Pac. 79.

BRIDGES, J.—In February, 1922, the plaintiffs deeded to the defendant, Yakima county, a thirty-foot strip of land which was to be used as a right of way for the Inland Empire Highway. The property is located in the vicinity of Yakima. The deed, among other things, contained the following clause: "Parties of the first part (plaintiffs) reserve all improvements on said land and all fences located thereon to be moved at the county's expense." On the outer fringe of this 30-foot strip was a number of shade trees, and it is said that they are the "improvements" mentioned in the reservation clause of the deed. Much testimony was received from both sides of the case concerning the question whether, at the time of the making of the deed, it was understood that these trees would not be interfered with. The trial court found that such was the agreement and that such was the purpose of the reservation clause of the deed.

When it came to building the road these trees were destroyed, and the plaintiffs brought this action for damages, alleging that, because of their destruction, their adjoining land had been damaged. The court, trying the case without a jury, entered judgment for the plaintiffs.

Appellant contends that the great weight of the testimony shows that, at the time of the making of the deed for the right of way, there was no understanding or agreement that the trees in question would be permitted to stand. It must be conceded that, while the respondent positively testified that there was such an agreement and it was the intention of the reservation clause in the deed to express that agreement, three witnesses for appellant, one positively and two with more or less certainty, testified that there was no such agreement. The trial court elected to believe the respondents' testimony. It is probable that he was greatly influenced

thereto by the fact that the reservation clause was put in the deed. The testimony shows that there were no "improvements" on this land whatever, unless it were the trees and fences; that the fences were not thought of as improvements is shown conclusively by their being mentioned in the reservation clause of the deed separately and independently of "improvements." It would therefore seem that the word "improvements" could have been used only with reference to the trees. It should be remembered that this deed was drawn by an inexperienced scrivener. The mere fact that the reservation clause is in the deed tends, it seems to us, very strongly to support the respondents' testimony to the effect that the trees were to be allowed to remain standing. At any rate, when all these facts are taken into consideration, we do not feel justified in overturning the trial court's findings.

But the appellant contends that the Inland Empire Highway is a state road and its construction was under state supervision, and that it was the state authorities who destroyed the trees, and that, if any person is liable to the respondents, it is the state and not the county.

Long before any of the occurrences herein mentioned, the county of Yakima had bonded itself in the sum of $500,000 for the purpose of building roads within the county. After the necessary right of way had been acquired for this Inland Empire Highway, the Yakima county commissioners passed a resolution which showed that the highway was to be built out of state money and Federal aid money, and for the purpose of giving financial assistance, the commissioners set aside out of the $500,000 road fund $124,720.30, "to be applied in cooperative expenditure with Federal aid and state funds in the construction" of that portion of the Inland Empire Highway which is in question here. The resolution also provides that the state highway

department "be and is hereby authorized and requested to act for and on behalf of Yakima county in all things pertaining to the selection, construction and maintenance of said improvement, under the provisions of the Federal aid road act . . . as may be necessary to secure Federal aid for said improvement." This resolution particularly refers to certain statutes, one of which is § 6845, Rem. Comp. Stat. [P. C. § 6857], which provides, among other things, that

"The state highway commissioner and the state highway board, constituting the state highway department . . . are hereby authorized and directed to act for and on behalf of . . . any civil subdivision of the state, in all things pertaining to the . . . construction . . . of roads under the provisions of said act of congress approved July 11, 1916; . . ."

This statute seems to contemplate that Federal aid roads shall be built under the supervision of the state highway department. Section 6833, Rem. Comp. Stat. [P. C. § 6829], provides that the authorities of any county may expend upon any primary or secondary highway any funds which it may have raised by the issuance of bonds for the building of roads within the county, "provided, that the county commissioners may, when the estimated cost of such expenditure exceeds the sum of twenty-five thousand dollars ($25,000), place the construction or improvement of such highway under the supervision and control of the state highway commissioner, who shall take full charge of the same, . . ."

Under the circumstances shown, it seems to us that the county was exercising a privilege given to it by statute, that is, expending its own money on what might be considered a part of a state highway within the county, and that it had placed such construction and the expenditure of the moneys under the manage-

ment and supervision of the state highway department. These facts, it seems to us, clearly make the state highway department the agent of the county in the construction of this road, and since the trees in question were cut down under the direction of the state highway department, it should follow that the latter was acting as the agent for the county and the county would be liable for what was done.

Viewing the facts in this way, an affirmance of the judgment is required. The judgment is affirmed.

TOLMAN, C. J., MAIN, ASKREN, and PARKER, JJ., concur.