[No. 27754. Department Two. May 13, 1940.]

KNAPP BRICK & TILE COMPANY, *Respondent*, v. SKAGIT COUNTY, *Appellant*.[1]

[1]Reported in 102 P. (2d) 679.

*Richard Welts* and *R. V. Welts,* for appellant.

*Ward & Barclay,* for respondent.

STEINERT, J.—Plaintiff brought suit against defendant for alleged damage to its water supply system. The court, sitting without a jury, found for plaintiff, and entered judgment accordingly. Defendant has appealed.

Respondent has for many years owned a tract of land in Skagit county, situated about five hundred feet easterly of what is referred to as the Big Lake road. Between the road and respondent's land, the ground slopes downward in an easterly direction.

Sometime in 1912, respondent constructed upon its tract a brick and tile factory. Prior to and since that date, respondent also erected upon its premises near the factory a series of six dwelling houses, which it rented to various persons. Water for the tile factory is required for three purposes: To moisten the clay used in the manufacture of its products; to cool an air compressor located in the tile plant; and to create

steam with which to heat the oil used in its factory burners. Water is also required for the usual domestic purposes in and about the six dwellings.

During all the years since 1912, respondent has obtained its necessary supply of water by means of a pipe line connected with a spring which is located on a hillside near the westerly edge of the Big Lake road. The spring was not upon respondent's original tract of land, but its waters had been appropriated and continuously used by respondent. In 1920, however, respondent obtained from the owner of the property a deed to the spring and a right of way for a pipe line across intervening land to its premises. Title to the spring and its waters is therefore claimed by respondent both by prescription and by deed.

About the time that respondent built its factory, it constructed a shallow, plank-lined cistern around the spring and attached thereto a one-inch pipe, which conducted the water, by gravity flow, to its buildings. A few years later, the cistern was enlarged and was encased with a brick wall, and a larger pipe was then installed. Still later, an auxiliary cistern, eighteen feet long, four feet deep, and four feet wide, and walled with hollow tile, was constructed near, and connected with, the main cistern, to serve as an auxiliary catch basin and reservoir. In 1929, the main cistern was again enlarged so as to have a depth of eight feet and a diameter of ten feet. It likewise was walled with hollow tile. The pipe line has, from time to time as occasion required, been repaired or replaced.

The water in the main cistern as finally constructed would rise to a level of about six feet overnight, and in the auxiliary cistern it would attain a height of two and one-half feet. This supply of water has at all times, except upon very rare occasions, been sufficient for all of respondent's needs. Prior to the events here

in question, the main cistern was approximately thirty feet from the county road above mentioned.

On June 13, 1935, the county commissioners of Skagit county adopted a resolution for the improvement of Big Lake road. Before any work was done, however, the county entered into an arrangement with the state, whereby, in consideration of the initiation of certain other projects by Skagit county, the state took over the Big Lake road project, which involved the widening, straightening, and improving of the county road. Under that arrangement, the county agreed to secure the necessary right of way and to pay all costs of construction in excess of twenty-three thousand dollars. The state thereupon prepared its own plans for the road project and subsequently let a contract in its own name for the improvement.

The roadbed was widened to within seven or eight feet of respondent's main cistern. The plans of the state also called for a drainage ditch along the west side of the road, the side nearest the cistern. The contract, however, between the state and the contractor for the road improvement work made no provision for minimizing the damage which might result to respondent's cisterns and water supply.

Accordingly, when the work of digging the ditch had progressed to points respectively about seventy-five feet north and thirty-five feet south of the main cistern, respondent, fearing that the ditch would jeopardize its water supply, instituted suit against the state, the county, and the contractor, to enjoin further continuance of that work.

On the day that the preliminary application for injunction was to be heard, the parties, through their respective officers and counsel, entered into an oral stipulation, under the terms of which the road work was to proceed in such a manner as not to endanger

the spring or the cisterns. It is conceded, however, that it was definitely understood that, by such stipulation, respondent did not lose nor waive any of its legal rights with respect to damage, and that appellant did not thereby acquire any advantage with respect to any legal claim that respondent might otherwise have. By the terms of the stipulation, it was further agreed that the county, in an effort to protect the spring and cisterns and to minimize any damage thereto, would construct a semicircular concrete retaining wall, or jacket, around that side of the main cistern which faced the road.

There is a conflict in the evidence as to who was responsible for the suggestion that such wall should be built. Appellant contends that it was wholly at the suggestion and insistence of Mr. Knapp, respondent's president, and that the county complied therewith merely in order to appease Mr. Knapp and to prevent further delay in the road work. Respondent, on the contrary, contends that it opposed the suggestion, but finally acquiesced because the county engineer insisted that the wall would give effective protection to the water supply. In our opinion, it is immaterial who made the suggestion with reference to that plan of procedure. The facts are that the county agreed to do the work in that way in order to obviate or minimize the damage to the water system, and that it was specifically understood by the parties that respondent was not waiving any claim for any resulting damage.

In any event, the county engineer succeeded in having the road plans changed by the state to the extent of eliminating the drainage ditch in the locality of the cisterns. Then, as a further precaution against any possible damage to the water supply resulting from the road work, and at the instance of the county, the

contractor proceeded to excavate the earth around the east side of the main cistern for the purpose of making a foundation for the semicircular jacket which was to be erected at a distance of about six inches from the tiled wall surrounding the spring. While appellant denies that any damage resulted from that operation, the record appears to us to justify the finding by the trial court that the workmen, in excavating the earth, loosened the hardpan forming the base of the cistern, and that, as a consequence, water in the spring and cistern escaped through the stratum underneath the base of the wall.

Respondent complained to the county officials, and the contractor again excavated the dirt around the cistern, tamped moistened clay along the foot of the wall, and, with the same kind of material, filled the six inch space between the concrete jacket and the tile lining of the cistern. This operation improved the situation somewhat, but failed to effect a complete, or even substantial, remedy. The water thereafter stood only about four feet in the main cistern, and not at all in the auxiliary reservoir. As a result, respondent's supply of water has been seriously impaired.

The county would do nothing further; at least it did nothing more. Respondent thereupon instituted this action.

According to the statement of questions involved and the assignments of error, appellant advances five propositions.

■ It first contends that respondent has not established such rights as entitle it to recover any damages from the county. This contention is predicated mainly upon the argument that the waters of the spring are merely "percolating waters," and not a part of the body or flow of a well-defined underground stream. From that premise, appellant concludes that, under

the rule stated in *Evans v. Seattle,* 182 Wash. 450, 47 P. (2d) 984, the county would not be liable for any injury to the spring resulting from the reasonable use by the county of its own property.

The rule affirmed in that case has no application here. There is no contention in the case at bar, nor is there any evidence to the effect, that the *source* of the spring, whether by percolation or otherwise, has been interrupted or deflected. The injury, if any, was to respondent's *storage facilities* built around the spring. The situation is the same as though respondent had stored its waters in a tank upon its own property, and appellant had, by its operations, damaged the receptacle, causing a loss of the water supply. Furthermore, the damage to the spring and cisterns was not caused by improvements made on the county's land, or by the reasonable use of its own property, as was the correlative situation in the *Evans* case, but resulted from a direct invasion of respondent's property. Since no question of prior or paramount rights with reference to the use or deflection of percolating waters is here involved, appellant's first contention cannot be sustained.

■ It is next contended, by inference rather than by assertion, that, in any event, respondent is not entitled to recover more than nominal damages. No discussion is devoted to the point, nor are any authorities cited. We will therefore dispose of the contention in an equally summary manner by saying that, if respondent is entitled to damages at all, it is entitled to recover to the extent that it has actually been damaged.

■ The third contention is that respondent is barred from recovery by reason of its failure to file a claim for damages pursuant to Rem. Rev. Stat., § 4077 [P. C. § 1664a], which provides, among other

things, that all claims for damages against any county must be presented to the county commissioners and filed with the clerk within sixty days after the time when such claim for damages accrued.

Appellant argues that, when the county entered upon respondent's property and attempted to do the particular work with respect to the spring, either it was a tort-feasor or else it was performing a contract made with respondent; it further argues that, whether the action is for tort or for breach of contract, the filing of a claim is a prerequisite to suit. We do not agree with appellant. On the contrary, we are of the view that this is an action for compensation for property taken or damaged in contemplation of Art. I, § 16, of the state constitution, which provides:

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, . . ."

In connection with the work of improving and constructing the road, the contractor directly invaded respondent's property, causing damage to its property rights. Accordingly, the case falls within the well settled rule that, under such circumstances, the filing of a claim is not a prerequisite to the maintenance of an action. *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625 (wherein all preceding cases are reviewed); *Netherlands American Mtg. Bank v. Centralia,* 144 Wash. 315, 257 Pac. 842; *Southworth v. Seattle,* 145 Wash. 138, 259 Pac. 26; *Clark v. Seattle,* 156 Wash. 319, 287 Pac. 29; *Litka v. Anacortes,* 167 Wash. 259, 9 P. (2d) 88; *Fix v. Tacoma,* 171 Wash. 196, 17 P. (2d) 599; *Armstrong v. Seattle,* 180 Wash. 39, 38 P. (2d) 377, 97 A. L. R. 826; *Decker v. State,* 188 Wash. 222, 62 P. (2d) 35; *Ulery v. Kitsap County,* 188 Wash. 519, 63 P. (2d) 352.

The *Ulery* case makes this very pertinent statement, which, in our opinion, is equally applicable here:

"The construction of highways by a county is lawful; but a county has no right to construct a highway to the damage of a private citizen of the county, and any use of land for a public purpose which inflicts an injury upon adjacent land, such as would have been actionable by a private owner, is a taking and damaging within the constitution, and the fact that it was not condemned in advance does not absolve it from liability where no negligence is charged in the performance of a governmental duty."

Respondent's action is not predicated upon negligence, but upon the damaging of its property for public use without first making just compensation.

■ Appellant, however, further argues, under its third contention, that the state alone, and not the county, was engaged in improving the road.

The record leaves the exact status of the road, whether a county road or a state highway, somewhat obscure. There is sufficient evidence, however, upon which to base a finding that the project was an integral part of the county's road system, and that the state was merely acting as the county's agent in the prosecution of the work. The situation is quite similar to that presented in *Peterson v. Yakima County*, 134 Wash. 504, 236 Pac. 79, wherein the county was held liable for the acts of the state highway department in the construction, within the county, of part of a state highway, to which project the county had contributed financially.

However, it is not necessary for us to determine here whether the road is, in fact, a county road or a state highway, and that question we do not now decide. For the purposes of this case, it is sufficient to say that, in so far as respondent was concerned, and to the extent of the situation here involved, the county

was engaged *together with* the state in making the improvement. It is conceded that the county had undertaken to secure the right of way for the project, and, as already stated, was obligated to pay all costs of construction in excess of twenty-three thousand dollars. Any liability to respondent resulting from the facts with which we are here concerned would, as between the state and the county, come within the obligation of the county.

Appellant's fourth contention is that, under the agreement between the parties, the county, in effect, permitted respondent to improve its spring, in such manner as it saw fit, at the county's expense, and that the agreement was in complete settlement of the controversy. This contention is made only inferentially and is not supported by any argument. We will dispose of this contention summarily by stating that the evidence, though in conflict, supports a conclusion to the contrary, and is consistent with the finding made by the trial court that, although respondent cooperated with the county in minimizing the damages, its cooperation did not amount to a taking over of the work by respondent.

Appellant finally contends that the award, by the trial court, of damages in the amount of fifteen hundred dollars was excessive. The evidence upon that issue was in violent conflict. Appellant's witnesses testified that the damages would not exceed five hundred fifty dollars. Respondent's witnesses, on the other hand, placed the damages as high as twelve thousand dollars. The factors involved in determining the exact amount are many and varied, and, in our opinion, the finding of the court in that respect is fully warranted by the evidence.

The judgment is affirmed.

BLAKE, C. J., BEALS, and JEFFERS, JJ., concur.