[Nos. 24616, 24627.   Department One.   January 2, 1934.]

OSCAR W. HOLMQUIST *et al., Respondents,* v. QUEEN
CITY CONSTRUCTION COMPANY, *Defendant,* THE
CITY OF SEATTLE *et al., Appellants.*

NELS ANDERSON *et al., Respondents,* v. QUEEN CITY
CONSTRUCTION COMPANY, *Defendant,* THE
CITY OF SEATTLE *et al., Appellants.*[1]

*A. C. Van Soelen* and *John E. Sanders,* for appellant
City of Seattle.

*Robert M. Burgunder, Arthur M. Hare,* and *Allen
Spratlin,* for appellant King County.

*W. D. Germain* and *Arthur H. Hutchinson,* for re-
spondents.

[1]Reported in 27 P. (2d) 1066.

MILLARD, J.—Augusta street, a regularly dedicated highway forty feet in width, extends beyond the city limits of Seattle and lies partly within the city of Seattle and partly in King county. Its course is easterly and westerly. The north half of this street was improved for traffic, and was six feet higher than the south half of the street. Under its contract with the city of Seattle, the Queen City Construction Company constructed a water pipe-line on Augusta street. Under a franchise granted by the county of King, the city was permitted to construct the pipe-line on Augusta street outside of the city limits. The pipe was laid approximately three feet below the surface of the ground, and the center line of the pipe-line was five feet north of the center line of Augusta street.

In 1905, Oscar W. Holmquist and wife acquired a tract of land outside the city limits of Seattle and within the limits of King county, abutting the south side of Augusta street. This tract was on the level with the south half of Augusta street, hence, six feet lower than the north half (the portion of the street traveled by the public generally) of the street. A number of years ago, the Holmquists built two inclines or driveways in Augusta street (the south half of the street), one toward the east and the other toward the west, to enable them to get to the traveled (north half) portion of Augusta street with vehicles. In making the excavation for the installation of the water main, the dirt was deposited on the south side of Augusta street. That dirt covered the Holmquists' two driveways.

In September, 1931, immediately following the contractor's installation of the pipe-line, the city rebuilt the two driveways. In July and August, 1932, the county widened Augusta street; that is, the south half was filled and the surface of that half of the street

brought to the level of the north half of the street. The Holmquist driveways on the south half of the street were covered. There was not, however, any encroachment upon the property of the Holmquists by reason of the extension of the level of the street to include the south half thereof. The improvement was confined within the right of way of Augusta street. Thereafter, the county constructed a driveway for the Holmquist property. The evidence is in conflict as to whether it was practicable to use the driveway to gain access to Augusta street.

Nels Anderson and wife owned a tract of land abutting the south side of Augusta street. That tract is situated partly within the city of Seattle and partly within King county. Leading from the entrance of the Anderson property toward the west, and within the city limits, was a driveway built upon the south half of Augusta street, which permitted access to and from the Anderson property to the traveled portion (north half) of Augusta street. Dirt was deposited on that driveway from the excavation for the pipeline, as in the case of the Holmquist property. Subsequently, the city constructed a driveway for the use of the Andersons. In July and August, 1932, the Anderson driveway, like the Holmquist driveways,—the driveways were within the south half of the right of way of Augusta street—were covered when the county improved Augusta street.

Separate actions were instituted by the Holmquists and the Andersons against the Queen City Construction Company, the city of Seattle and the county of King, to recover property damage alleged to have been sustained as a result of the installation of the water pipe-line on Augusta street. The causes were consolidated for trial, which resulted in findings by the court that the construction company did not dam-

age the property of the plaintiffs, but that the county of King and the city of Seattle invaded the property of the plaintiffs, to the damage of the Holmquists in the sum of seven hundred and fifty dollars, and to the damage of the Andersons in the sum of two hundred and fifty dollars. In making tentative findings, the trial court said:

"Considering first the Anderson case as a tentative finding: That is, that the plaintiffs' property has suffered a physical invasion; that due to the change of the grade as it existed prior to any work being done by the defendants, and the condition of the grade as it now is in, at least, access which theretofore existed for vehicular traffic to and from this property to Augusta street, has been cut off, and that this constitutes an actual damage. Whether or not it constitutes a legal damage, I'll hear from counsel; if such damage is any that plaintiffs have sustained by virtue of this physical invasion, and also by virtue of cutting off the access.

"Relative to the Holmquist property, I find that such damage as the plaintiffs may have sustained incident with that evidence which had to do with the blasting, the barn being injured or damaged, the hay being injured or damaged, the house itself being flooded,—all of this damage occurred at a time which was prior to the time when any legal recovery can be had therefor. The blasting operations took place sometime at least prior to June or July, 1931. One of the witnesses for the plaintiff testified that the damage and such that was sustained to the house by virtue of this flooding occurred during July or August in 1931. The claims in these cases are dated and I believe filed October 1st and 2nd, so any damages that may have been sustained by reason of those things, occurred at a time for which no recovery can be had therefor.

"The court also makes a tentative finding that the plaintiff Holmquist has not sustained any damage by reason of any injury or damage to the trees, or any injury or damage other than the following:

"Such access as the plaintiff Holmquist had prior to the happenings referred to in this case by the defendants,—that access to Augusta street and on which vehicular traffic was able to go from the road down into the place has been cut off by the operations of the defendant; that there has been a physical invasion of the plaintiff Holmquist's property, and that such damages as the plaintiff Holmquist has sustained—actual damage I mean as distinguished from legal damage—has been occasioned by the cutting off of a suitable access to the property.

"With regard to the Queen City Construction Company in the Anderson case, the court makes a tentative finding and ruling that there is no evidence to sustain any judgment as against the Queen City Construction Company in the Anderson case."

Judgments were entered accordingly. The city of Seattle and the county of King have appealed.

The respondents alleged in their complaints that they sustained certain property damage as the result of the negligence of the defendant Queen City Construction Company, "acting as agent for and on behalf of each and all of the said defendants", in the installation of the city's pipe-line on Augusta street. The trial court found that the construction company, in the performance of its contract with the city, did not damage the property of either of the respondents. The physical acts of excavation, deposit of dirt upon the respondents' driveways, etc., were the acts of the construction company alone.

If there was any negligence, it was primarily the negligence of the construction company. The city's negligence, if any, was necessarily derived or imputed only from the negligence of the construction company. The construction company was not negligent—the trial court so found—hence the appellant city can not be held liable to the respondents upon the ground of their being damaged as the result of the city's negligence.

The exoneration of the construction company absolved the city. *Gerritsen v. Seattle,* 164 Wash. 459, 2 P. (2d) 1092.

There was no physical invasion of the property of either of the respondents. There is no evidence that either the city or the county encroached, by sloping or otherwise, on the property of either of the respondents. The only basis of liability, if any, is for deprivation of access to the property of the respondents by reason of the improvement of Augusta street. If deprived of access, the deprivation was effected by filling in the south half of the street and raising it to the level of the north half of the street and thereby covering the driveways, which were within the right of way of Augusta street, to the property of the respondents. The city would not be liable for any damage resulting from that improvement, inasmuch as the work was performed by the county of King approximately nine months subsequent to the city's completion of its pipe-line work.

The claims of respondents Holmquist and Anderson for damages were filed with the county in October, 1931, and, being rejected, the claimants commenced these actions in December, 1931. The county performed no work upon Augusta street from the time the Queen City Construction Company commenced installation of the pipe-line until July, 1932, which was more than six months after the filing of the claims with the county and the commencement of these actions.

It is a condition precedent to the right to maintain an action for damages against a county that a claim therefor be presented to the board of county commissioners of such county and filed with the clerk thereof within sixty days after the time when such claim for damages accrued. *Old National Bank v. Lewis County,*

137 Wash. 436, 242 Pac. 961; *Shaw Supply Co. v. King County,* 169 Wash. 175, 13 P. (2d) 472; 172 Wash. 137, 20 P. (2d) 8.

There being no evidence of property damage sustained by either of the respondents prior to the date they filed their claims, the two actions can not be maintained against the county.

The judgments are reversed, and the causes remanded with direction to dismiss both actions.

BEALS, C. J., STEINERT, MAIN, and MITCHELL, JJ., concur.