[No. 26274.    Department One.    November 9, 1936.]

SENJA DECKER, *Respondent*, v. THE STATE OF
WASHINGTON *et al., Appellants.*[1]

[1]Reported in 62 P. (2d) 35.

*The Attorney General* and *W. A. Toner, Assistant,* for appellant.

*A. H. Ward* and *Condon V. Barclay,* for respondent.

BLAKE, J.—The plaintiff is the owner of the west half of the southwest quarter of section five, township thirty-five, north, of range five, E. W. M., in Skagit county. The property on the south adjoins property of the state upon which are located the buildings of the Northern Hospital for the insane. On the north, plaintiff's property is bounded by property belonging to the state upon which is located a reservoir from which the water supply for the hospital grounds and buildings is obtained.

In 1911, plaintiff's predecessor in interest granted to the state a right of way over the property ten feet wide, for pipe and pole lines. The right of way deed provided that water mains should be laid "at a sufficient depth to permit of the plowing of the ground above the same." It was further stipulated that the state should have "the right to enter on and over said lands, and each and every part thereof, whenever it becomes necessary to repair the said pipes or mains under said land."

Shortly after obtaining the easement, the state laid a water main along the right of way. For the most part, the main was laid underground. It was, however, carried above ground by means of wooden structures across two small ravines.

In 1931, the legislature, by appropriation, made available to the director of finance, business and budget the sum of ten thousand dollars, for the purpose of relaying the water main from the reservoir to the hospital grounds. The work of taking up the old main and laying the new was under the direct supervision of the then superintendent of the Northern Hospital. For the most part, the new main followed the course of the old and was laid underground, except where it crossed the ravines. Across these, it was carried on concrete bents or piers.

As an adjunct to the work of taking out the old main and laying the new, the superintendent slashed a roadway the full length of plaintiff's land. This roadway, eight to ten feet wide, was covered with cinders to a depth of about twelve inches. Across the ravines, two concrete culverts were built—one thirty feet in length, the other twenty-eight. The roadway to some extent is on the right of way granted in 1911, but much of it is not. However, whether the road is within the original right of way or not, we deem immaterial, since the state acquired no right under the deed of easement to construct or maintain a road across plaintiff's property. The most that it acquired under the deed was the right to enter for the purpose of making repairs to or relaying the main.

What the state has actually done is to take a strip of ground across plaintiff's property for a roadway from the hospital grounds to the reservoir. The consequence of the taking is to divide plaintiff's property in the middle from end to end.

Plaintiff brought this action to recover damages, or, more correctly, compensation, on the theory that there had been a taking and damaging by the state under its power of eminent domain. She recovered judgment on that theory in the amount of $1,700, which included interest on the amount of the award as of the time of the taking and damaging. The state appeals.

As we understand the state's position, the assignments of error bring before us five questions for consideration: (1) Was the state acting within the scope of the easement granted to it in 1911? (2) Did the superintendent of the Northern State Hospital merely commit a trespass; or (3) was the state acting under its power of eminent domain? (4) Was respondent entitled to interest on the amount of the award as of the date of the taking? (5) Was the amount of the award excessive?

*First:* We think it clear, from what we have already stated as to the character of the easement granted, that the rights now asserted by the state are different in extent and kind from any that could be claimed under the right of way deed. While it is suggested that there was from the beginning an old skid road which was used by state employees in going back and forth between the hospital grounds and the reservoir, we do not understand appellant to claim any prescriptive rights.

But if it does, we think it clear that such uses as the state's employees made of respondent's property, beyond the strict grant of the easement, was permissive. Not until the laying of the new water main did the state assert any hostile rights. Even the carrying of the original water main above surface over the ravines we regard as permissive rather than the as-

sertion of a hostile right in excess of the easement granted.

■ *Second:* Appellant contends that the superintendent was acting without authority, and that the building of the road and the culverts and the erecting of the concrete bents were torts, for which it was necessary to file a claim with the state auditor, under Rem. Rev. Stat., § 11007 [P. C. § 6592].

As to the first branch of the contention, it is clear that the then superintendent was not acting on his own initiative, but under the direction of the director of finance, control and budget, who, under Rem. Rev. Stat., § 10899 [P. C. § 6625], has full power to manage and govern the Northern State Hospital, "subject only to the limitations contained in this act and other acts relating to the management" of state institutions. The rights asserted by the then superintendent in the building of the road and the laying of the new water main are now asserted by the present superintendent and not disclaimed by the director. What was done was in connection with the management of, and for the benefit of, the Northern State Hospital. That the superintendent was acting with authority, there can be no doubt, and the state is responsible for his acts.

■ Whether it was necessary for respondent to file a claim under Rem. Rev. Stat., § 11007 [P. C. § 6592], is to be determined by the capacity in which the state, through its officers, was acting. If it was acting in a proprietary · capacity, its liability would sound in tort, and compliance with the statute would be a necessary prerequisite to holding it responsible. But if it was acting in its sovereign capacity, under its power of eminent domain, the filing of a claim would be unnecessary. For in the exercise of that power, it is required by the constitution (§ 16, Art. I) to pay just

compensation for property taken for public use. *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820.

*Third:* The contention seems to be that the state could not have acquired the roadway across respondent's property by condemnation. The argument is made that this is not a public road, nor is it a private way of necessity—the assumption apparently being that the state could not, under the circumstances, exercise its power of eminent domain for any other purpose. This argument, however, fails to take into account the fundamental principles that the power of eminent domain is inherent in the state (*McPherson Bros. Co. v. Douglas County,* 150 Wash. 221, 272 Pac. 983); that the power is not derived from, but only limited by, the constitution (*Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68); that, under our constitution, the only limitations upon the exercise of the power by the state is that property may be taken only for public use and only upon the payment of just compensation (*State ex rel. Washington Public Service Co. v. Superior Court,* 86 Wash. 155, 149 Pac. 652); that whether the use be "really public" is for the courts to determine, and in the determination of that question they will "look to the substance rather than the form, to the end rather than the means" (*State ex rel. Puget Sound Power & Light Co. v. Superior Court,* 133 Wash. 308, 233 Pac. 651).

Now, it is recognized by all the courts that the taking of property by the state for hospitals and almshouses is a public use. I Lewis Eminent Domain (3rd ed.), § 270; *United States v. Fox,* 94 U. S. 315. It follows, we think, that the taking of property which is reasonably necessary to the proper maintenance and operation of such an institution as the Northern Hospital is a taking for public use. There can be

nothing more necessary to the operation of such an institution than the maintenance of an adequate water supply. If the state were here asserting its right to condemn the property of respondent which it has already taken, we should have no hesitancy in holding that the use for which it sought to condemn was "really a public use." Having already taken respondent's property for "public use," the state cannot now escape paying just compensation.

It is suggested by way of argument that respondent could and should have sought an injunction when the state asserted rights in her property which could not be claimed under the right of way deed. Indeed, she had two remedies: "One to enjoin, and the other to permit the work to go on and claim damages." The waiver of the one does not deprive her of the other. *Caldwell v. Seattle,* 75 Wash. 565, 135 Pac. 470, Ann. Cas. 1915C, 176.

*Fourth:* The general rule is (and this court is committed to it) that interest is to be added to the amount of the award from the time possession of the property was actually taken. *Great Northern R. Co. v. Seattle,* 180 Wash. 368, 39 P. (2d) 999.

*Fifth:* It is contended that there was no substantial damage to the property. The only evidence on the subject of damages was offered by respondent. It was all to the effect that, before the road was put through, the eighty acres were worth $4,000; that afterwards the tract was worth only $2,000. The amount of the award is amply supported by the evidence.

Judgment affirmed.

Millard, C. J., Main, Steinert, and Geraghty, JJ., concur.