[No. 28481. Department One. December 20, 1941.]

DAVID BOITANO *et al.*, *Appellants*, v. SNOHOMISH COUNTY, *Respondent*, ALICE CUMMINGS, *Defendant.*[1]

*O. D. Anderson* and *Frank L. Cooper*, for appellants.

*J. W. Dootson* and *C. P. Brownlee*, for respondent.

STEINERT, J.—This is an action for damages to real property caused by the acts of defendant Snohomish county in conducting and precipitating water from its premises onto the land of plaintiffs. The action

[1]Reported in 120 P. (2d) 490.

was tried to the court without a jury. The court made findings of fact, from which it concluded that plaintiffs were not entitled to recover. Judgment was entered accordingly, and plaintiffs have appealed.

The facts as found by the trial court, in so far as they are material here, are as follows: Appellants own an undivided three-quarters interest in approximately eighteen acres of garden land in Snohomish county. They also hold the remaining undivided one-quarter interest in the land under a lease from Alice Cummings, who was made a party defendant to the action for the reason that she refused to join as plaintiff. She is not, however, a party to this appeal.

The land lies several feet below, and just west of, a paved public highway. Bordering the highway on the east is a tract of land which the county acquired by purchase about twenty-five years ago, for use as a gravel pit. That land, in its original state, lay upon a hillside from which the county proceeded to excavate gravel to be used in the construction and maintenance of public highways. In that operation, the county laid out no particular plan, but, as it proceeded with the work, excavated the earth down to an approximate level with the highway.

Some seepage and drainage from the hillside had always found its way onto appellants' land, and, as the excavation was carried forward, numerous small springs were uncovered and opened, but neither the seepage nor the overflow from these springs was of sufficient volume to injure adjacent property, except possibly during certain winter months or after a heavy rainfall.

On or about October 15, 1939, the county, while engaged in excavating gravel for the purposes heretofore mentioned, uncovered and opened a large spring on its premises, at a point about one hundred fifty yards

east of the highway. The flow of water from this spring was directed by the county into an artificial channel dug by it, leading from the source of the flow westward to the public highway, and then underneath the highway, through a culvert, onto a corner of appellants' land. From that point, the water flowed onto adjoining property, whence, by seepage and flow, it was precipitated in large quantities onto other parts of appellants' premises, with the result that the water covered about two and one-half acres of appellants' land, rendering it wholly unfit for gardening purposes, to which it had formerly been devoted. Other portions of appellants' land were also injured through seepage from the acreage primarily affected. From October, 1939, to the time of the trial below, the water continued to flow and seep in the manner just described. The trial court found that appellants had suffered damages in the amount of twelve hundred fifty dollars.

The county has never instituted any condemnation proceeding in connection with either the acquisition or the operation of its gravel pit, nor has it paid any compensation to appellants for the damages inflicted upon them. On the other hand, appellants did not at any time prior to the commencement of this action present or file any claim for damages in compliance with Rem. Rev. Stat., § 4077 [P. C. § 1664a], which provides that all claims for damages against a county must be presented to the county commissioners and filed with the clerk within sixty days after the time when such claim for damages accrued, and that all such written claims must locate and describe the defect which caused the injury, must specify the amount of damages claimed, and must state the actual residence of the claimant at the time of presenting and filing the claim and for a period of six months immediately prior

to the time such claim for damages accrued. The uncovering of the large spring on the county's property, although due to the act of the county, was not due to any negligence in its operation of the gravel pit.

From these facts, the court concluded that appellants were not entitled to recover from the county. That conclusion was based upon the fact that appellants had not filed a claim in accordance with the statute just cited.

The sole question with which we are here concerned is whether or not the precipitation of water upon appellants' land, in the manner and under the circumstances above described, constitutes a taking or damaging of private property within the meaning of Art. I, § 16, of the Washington constitution which reads, in part, as follows:

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, . . ."

Appellants' right to recover for the damages sustained by them depends wholly upon the answer to the question just stated. If the acts of the county constituted a taking or damaging in the constitutional sense, then the filing of a claim in accordance with Rem. Rev. Stat., § 4077, was not a prerequisite to the maintenance of the action, and appellants are entitled to a judgment in the amount of their damages as found by the court. *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, rehearing denied, 135 Pac. 820; *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625; *Marshall v. Whatcom County,* 143 Wash. 506, 255 Pac. 654; *Netherlands American Mtg. Bank v. Centralia,* 144 Wash. 315, 257 Pac. 842; *Litka v. Anacortes,* 167 Wash. 259, 9 P. (2d) 88; *Knapp Brick & Tile Co. v. Skagit County,* 4 Wn. (2d) 152, 102 P. (2d) 679.

On the other hand, if the damage to appellants' land was not within the contemplation of the constitutional provision, then the filing of a claim was a condition precedent to the right to maintain the action, and, no such claim having been made, appellant cannot recover. *Fix v. Tacoma,* 171 Wash. 196, 17 P. (2d) 599; *Holmquist v. Queen City Construction Co.,* 175 Wash. 681, 27 P. (2d) 1066 (in which the constitutional provision was not discussed); *Snavely v. Goldendale,* 10 Wn. (2d) 453, 117 P. (2d) 221.

■ The use of land for a gravel pit by a county of this state is undoubtedly a public use, for, by Rem. Rev. Stat., Vol. 7A, § 6450-9 [P. C. § 2697-422] (Laws of 1937, chapter 187, p. 738, § 9),

"Whenever it is necessary to secure any lands . . . for any borrow pit, gravel pit, quarry or other land for the extraction of material for county road purposes or right of way for access thereto, the board of county commissioners is authorized to acquire such lands on behalf of the county by gift, purchase or condemnation. . . . "

Accord, *Armstrong v. Seattle,* 180 Wash. 39, 38 P. (2d) 377, 97 A. L. R. 826.

■ The taking or damaging of property to the extent that it is reasonably necessary to the maintenance and operation of other property devoted to a public use is, likewise, a taking or damaging for a public use. In *Decker v. State,* 188 Wash. 222, 62 P. (2d) 35, the state had slashed a roadway across the plaintiff's land for the purpose of relaying a water main leading from a reservoir located north of the plaintiff's property to the Northern State Hospital for the Insane situated south of her premises. The plaintiff brought an action to recover compensation, on the theory that there had been a taking and damaging by the state under its power of eminent domain, although no proceeding of that nature had been instituted by the

sovereign. On appeal from a judgment against it, the state made the contention, among others, that it could not have acquired the roadway by condemnation because it was neither a public road nor a private way of necessity. In answer to that contention, we said:

"Now, it is recognized by all the courts that the taking of property by the state for hospitals and almshouses is a public use. I Lewis Eminent Domain (3rd ed.), § 270; *United States v. Fox,* 94 U. S. 315. It follows, we think, that the taking of property which is reasonably necessary to the proper maintenance and operation of such an institution as the Northern Hospital is a taking for public use. There can be nothing more necessary to the operation of such an institution than the maintenance of an adequate water supply. If the state were here asserting its right to condemn the property of respondent which it has already taken, we should have no hesitancy in holding that the use for which it sought to condemn was 'really a public use.' Having already taken respondent's property for 'public use,' the state cannot now escape paying just compensation."

In *Ulery v. Kitsap County,* 188 Wash. 519, 63 P. (2d) 352, the plaintiff brought suit to recover compensation for damages by waters deposited upon his land and impounded there by a newly constructed highway. Plaintiff did not claim that the construction work itself was unlawful or that there was any negligence in its performance. Touching the question whether or not the damages allowed by the trial court were constitutional damages or were merely damages arising from tortious negligence of the county, for which a claim should have been duly filed, we said:

"Under Art. I, § 16, Washington constitution, it is a condition precedent to the exercise of the power of eminent domain by a county of this state that compensation therefor shall first be made.

"The construction of highways by a county is lawful; but a county has no right to construct a highway

to the damage of a private citizen of the county, *and any use of land for a public purpose which inflicts an injury upon adjacent land, such as would have been actionable by a private owner, is a taking and damaging within the constitution,* and the fact that it was not condemned in advance does not absolve it from liability where no negligence is charged in the performance of a governmental duty. [Citing cases]

"The law is well established here that one may not, by artificial means, convey surface and outlaw waters from his land and deposit them on the land of others to their damage. [Citing cases] The construction of Lateral Highway No. 2, although without negligence, brought more water upon respondents' land." (Italics ours.)

The italicized portion of the opinion from which we have just quoted is taken, with some slight modification, from *Great Northern R. Co. v. State,* 102 Wash. 348, 173 Pac. 40, both opinions having been written by the same judge. In the *Great Northern* case, the state, in constructing the Chuckanut highway, was compelled to blast a shelf out of the rock of a hillside, and as an unavoidable consequence quantities of earth and rock were thrown down upon the plaintiff's railroad tracks which skirted the base of the hill. The plaintiff's theory was that, in inflicting the damages, the state acted in its sovereign capacity, that its activities were necessary for the accomplishment of a public object, and that the plaintiff was therefore entitled to just compensation under the constitutional provision quoted above. The court obviously adopted that theory, for in addition to the language later adopted in the *Ulery* case, *supra,* the opinion contains this paragraph:

"It is contended by the state that a suit against it to recover for damages will not lie, *and that the damage herein involved is not for a public use within the meaning of the constitutional provision requiring compensation.* We cannot accede to this contention; for if the

state could have condemned the right to inflict the necessary damage or invade plaintiff's property, its failure to so condemn is not an excuse to deny plaintiff's recovery. *Kincaid v. Seattle, supra* [74 Wash. 617, 134 Pac. 504, 135 Pac. 820]; *Provident Trust Co. v. Spokane*, 75 Wash. 217, 134 Pac. 927, Ann. Cas. 1915C 63." (Italics ours.)

In the case at bar, the county was engaged in operating a gravel pit for public use. In that operation it encountered and uncovered a large spring, and in order to rid its premises of the water from this spring it constructed a channel and through it precipitated the water upon appellants' land, thus effecting a direct and permanent invasion of appellants' premises and inflicting upon them a lasting damage of substantial proportions. The construction of the channel and the disposition of the water constituted, in our opinion, a necessary part of the county's operation of its gravel pit, for the inference is irresistible that the water would otherwise have accumulated there and thus would have interfered with the operation of the pit. In using appellants' land for the disposal of the water from its own premises, the county was devoting that land to a public use incidental to its operation of the gravel pit in order to obtain material necessary for the construction and maintenance of its highways. In proceeding as it did, the county was not acting tortiously, or in a negligent manner, but was exercising its power of eminent domain, even though it did not take legal steps to condemn the land before damaging it for a public use. Having exercised the sovereign power of eminent domain, it cannot now escape paying compensation, for "no man shall give unwillingly unless he is paid in money for that which is taken from him." *Kincaid v. Seattle, supra.*

"In our opinion, the theory that property rights are ever to be sacrificed to public convenience or necessity

without just compensation is fraught with danger, and should find no lodgment in American jurisprudence." *Great Northern R. Co. v. State, supra.*

Respondent endeavors to draw a distinction between damages resulting from construction work involved in the acquisition or improvement of property for public use and damages resulting from the operation of such property after its acquisition, construction, or improvement. It is true that most of our cases upon this subject come within the first category, but the distinction sought to be drawn by respondent does not affect the principle underlying the constitutional provision here involved. In any event, we have a number of cases, coming clearly within the second category, wherein the rule that compensation must be paid was applied just as in the first class of cases. In fact, the *Decker* case, *supra,* is one of the latter character, for, as already shown, the damage inflicted upon the plaintiff therein was the result of the taking of property reasonably necessary to the proper maintenance of other property already devoted to a public use.

In *Jacobs v. Seattle,* 93 Wash. 171, 160 Pac. 299, L. R. A. 1917B, 329, and 100 Wash. 524, 171 Pac. 662, L. R. A. 1918E, 131, this court upheld the right of a property owner to maintain an action under Art. I, § 16, of the Washington constitution to recover compensation for both the erection and the *operation* by the city of an incinerator in which garbage was burned on land adjacent to that of the private owner.

In *Southworth v. Seattle,* 145 Wash. 138, 259 Pac. 26, the plaintiffs were allowed to recover compensation, under the same constitutional provision, for damages resulting from the construction and *operation* of a sewage disposal plant near their property. Recovery was likewise permitted in *Aliverti v. Walla Walla,* 162

Wash. 487, 298 Pac. 698, which was also an action for compensation for damages resulting from the maintenance and *operation* of a sewage disposal plant in the vicinity of the plaintiffs' properties.

The most recent case on the subject is that of *Snavely v. Goldendale, supra*, in which the facts presented a strong analogy to those in the case at bar. In that case, we upheld the right of property owners to maintain an action against a city, under the constitutional provision here in question, to recover damages for injury to their property resulting from the discharge by the city of raw sewage from its sewage disposal plant into a stream flowing past the plaintiffs' premises.

Upon the authority of these latter decisions, we hold that the constitutional provision applies to damages resulting from the operation of the gravel pit, such operation including, as already decided, the acts of constructing the channel and conveying the water through it to appellants' premises.

Respondent's principal contention is that appellants' damages are merely consequential or resultant damages, for the reason that the flooding of their land was not an indispensable and intentional part of any improvement project carried out according to a plan which necessarily anticipated such flooding or contemplated that it should be done. The contention is rested wholly upon the case of *Jorguson v. Seattle*, 80 Wash. 126, 141 Pac. 334, in which recovery was sought for damages occasioned by a progressive sliding of soil due to the regrading of a street some years before. When the original improvement was inaugurated, condemnation proceedings were instituted by the city for the ascertainment and payment of compensation for property taken or damaged in the change of grade. Jorguson, although not an abutting property owner, was made a party to the original condemnation suit to as-

certain and determine the amount to which he might be entitled by reason of the fact that the regrade interfered with access to his property, but damages from sliding were neither contemplated nor litigated in that suit. Later, the soil in the vicinity of the regrade began to slide, and when the slide had progressed to Jorguson's property he commenced an action for damages against the city.

One of the main questions in that case was whether the filing of a claim was necessary to the maintenance of an action for damages resulting from the prosecution of a public work where there had been an antecedent condemnation of land, the taking or damaging of which was contemplated by the plan of improvement, but where the specific injury complained of was not contemplated as a part of that plan. This court answered that question in the affirmative, and in doing so distinguished the case before it from three preceding cases, including the *Kincaid* case, *supra*, on the ground that in each of those three cases the taking or damaging was an indispensable and intentional part of the improvement, necessarily anticipated by the plan, and intended in the performance, of the work, and on the further ground that in none of those prior cases had there been any antecedent condemnation for the right to take or damage. In its discussion of the question the court further said, with reference to the constitutional provision:

"This provision has sole reference to such taking or damaging as is contemplated in the exercise of the power of eminent domain. It is a mere limitation upon the otherwise unlimited sovereign power to take or damage private property for public use."

and, further,

"The above mentioned provision of the constitution was never intended to apply to consequential or resultant damages not anticipated in, nor a part of, the

plan of a public work. It was never intended to apply to damages resulting to private property from the negligent or wrongful use of public property. As to such damages, tortious in their very inception, the injured person is remitted to his remedy on the case, as in other cases of tortious taking or injury."

and, still further,

"As pointed out in the *Kincaid* case [*supra*] and the *Casassa* case [*Casassa v. Seattle,* 75 Wash. 367, 134 Pac. 1080], the sum of the distinction lies in the fact that, where there is a taking or damaging of property, the use of which is contemplated in the plan of the improvement, that taking is not tortious."

Respondent bases its argument upon the language above successively quoted.

Just how far the *Jorguson* case is still authoritative is a debatable question. In *Hamm v. Seattle,* 143 Wash. 700, 255 Pac. 655, this court referred to the *Wong Kee Jun* case, *supra,* as one "where we have adopted a rule different from that enunciated in *Jorguson v. Seattle.*" In the *Wong Kee Jun* case, this court, after analyzing the *Jorguson* case, said:

"We may accept the holding of the *Jorguson* case to the effect that the constitutional provision has sole reference to such taking or damaging as is contemplated in the exercise of the power of eminent domain and is a mere limitation upon the otherwise unlimited sovereign power to take or damage private property for a public use; and yet it must follow that, whenever property is thus taken, *voluntarily or involuntarily, by the sovereign state or by those to whom it has delegated this sovereign power, the courts must look only to the taking, and not to the manner in which the taking was consummated.* A mere temporary interference with a private property right in the progress of the work, especially such as might have been avoided by due care, would probably be tortious only. Improper blasting, causing debris to be cast upon the adjacent property, would seem to be tortious and not a taking

or damaging under the constitution, but the removal of lateral support, causing slides or any permanent invasion of private property, must be held to come within the constitutional inhibition." (Italics ours.)

The opinion in the *Wong Kee Jun* case then concludes with a statement to the effect that the *Casassa* and *Jorguson* cases are overruled in so far as they are out of harmony with the rules announced in the overruling opinion.

Reverting to what was said in the *Jorguson* case, we note that in that case there had been a "plan" laid out by the city for the regrade of certain streets, as there usually is in such situations; we note further, with respect to that case, that there had been a prior condemnation for the taking or damaging of property necessary to the execution of that plan. The court therefore held that, where the taking or damaging was wholly outside of the work contemplated by the plan and not a necessary incident to the making of the public improvement, such taking or damaging was nothing more than a negligent or wrongful use of public property, tortious in its nature, for which relief should have been sought by an action on the case rather than by a proceeding under the constitutional provision involved here.

In the case at bar, there has never been any "formal plan" for the improvement of the gravel pit, and, in the very nature of the adventure, there was no occasion for any such plan. Consequently, in this case, there is no point in discussing any fancied deviation from a nonexistent plan, or in considering the wrong done as being wholly outside such plan. Furthermore, in the case at bar, there was never any condemnation proceeding for the determination of the compensation to be paid for the taking or damaging of appellants' property. Even if it be assumed that the *Jorguson* case

still has any authoritative force, the case at bar, so far from coming within any principle of that case, comes, rather, within the principle of those cases where private property has been damaged through the maintenance or operation of property devoted to a public use. It is indeed, in our opinion, a perfect illustration of the rule of the *Wong Kee Jun* case set forth above, to the effect that whenever, in the exercise of the power of eminent domain, private property is taken, voluntarily or involuntarily, by the sovereign state or by those to whom the state has delegated the sovereign power of eminent domain, and the taking or damaging is in consequence of a permanent invasion of private property, the owner is entitled to compensation under Art. I, § 16, of our state constitution.

The judgment is reversed, with direction to the trial court to enter judgment for appellants against Snohomish county in the sum of twelve hundred fifty dollars, together with interest thereon at the rate of six per cent per annum from October 15, 1939, and for their costs.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.