[No. 8290–3–III. Division Three. March 31, 1988.]

GERALD E. SEAL, ET AL, *Appellants,* V. NACHES–SELAH IRRIGATION DISTRICT, *Respondent.*

*Donald Bundy,* for appellants.

*James Scott* and *Smith, Scott & Mazzola,* for respondent.

GREEN, J.—Gerald and Jean Seal commenced this action against the Naches–Selah Irrigation District alleging that seepage from its irrigation canal across their property damaged their cherry orchard. They based their claim on several theories: negligence, trespass, nuisance, and an unconstitutional taking of their property. Only the negligence theory was presented to the jury. The Seals were awarded a net judgment of $2,310, representing a gross verdict of $46,200, reduced by 95 percent for their contributory negligence. The Seals appeal. We affirm.

In 1955 the Seals purchased 13 acres of property located along the Old Naches Highway north of Naches. The property was undeveloped sagebrush land. They built their home there and started planting cherry trees in 1961. The property was suitable for the proper growth of cherries, as there had been no apparent excessive groundwater in the area. By 1976 they had planted 452 cherry trees.

The Seals' property lies on a slope with their home and a peach orchard lying above and their cherry orchard lying below the Naches–Selah Irrigation District canal which bisects the property. The cherry orchard is divided into an east block and a west block. In the early 1970's water from the canal seeped onto the Seals' property for a short time each spring after the canal was filled with water. The canal sealed itself by June and the seepage ended. Various measures were taken by both parties to correct the problem. In

1976 the Seals installed a drain field in the east block. In 1978 the District dug a 1½– to 2–foot–deep ditch in the west block to drain water away from the orchard. After this ditching, the Seals testified they perceived increased seepage into the west block of the orchard. In 1981 the District installed a black plastic liner in the canal to seal earthen portions along the east block. This apparently did not solve the seepage problem. In 1984 the Seals put an additional drainage pipe on the west block.

The District generally maintained the canal by cutting willows and mowing other growth along the canal bank. Also, according to the Seals, from 1961 through 1976 the District's ditch rider consistently fixed spontaneous leaks along the canal except for one sudden flooding incident in 1971. The Seals indicate more leaking occurred when the ditch rider was replaced in 1976.

According to the Seals, by 1980 they noticed a decrease in fruit production and encountered problems with their trees. They testified the trend continued through 1986, by which time they claim a loss of 74 tons of cherries and 120 fruit trees affected by seepage. The Seals contend that phytophthora pathogens, a fungus that effectively kills trees by stopping the flow of nutrients to them, are present in the seepage from the canal, thus infecting the trees.

There is conflicting testimony by the experts as to what caused the damage to the trees. The Seals' experts testified the orchard was well maintained and that seepage from the canal and the District's refusal to remedy it is the source of the problem. On the other hand, the District's experts testified the Seals utilized poor farming practices and further contributed to the problem by damming up ditches intended to drain the orchard of excess water.

Throughout the trial, the District contended that seepage from the canal did not cause the damages claimed by the Seals. The jury found the Seals 95 percent negligent and the District 5 percent and rendered a net verdict of $2,310.

First, the Seals contend the court erred in refusing to give their proposed instructions 13, 14, 15 and 16 relating

to trespass. They argue the instructions should have been given based on RCW 64.12.030 and common law trespass, citing *Zimmer v. Stephenson*, 66 Wn.2d 477, 403 P.2d 343 (1965), Restatement (Second) of Torts § 165 (1965), and *Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 709 P.2d 782 (1985). We disagree.

RCW 64.12.030 provides:

> Injury to or removing trees, etc.—Damages. Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, . . . without lawful authority, in an action by such person, . . . against the person committing such trespasses . . . if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.

The purpose of this statute is threefold: (1) to punish a willful offender; (2) provide for treble damages; and (3) to discourage persons from carelessly and intentionally removing another's shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred. *Guay v. Washington Natural Gas Co.*, 62 Wn.2d 473, 476, 383 P.2d 296 (1963); *Tatum v. R & R Cable, Inc.*, 30 Wn. App. 580, 584, 636 P.2d 508 (1981), *review denied*, 97 Wn.2d 1007 (1982). These purposes do not contemplate an award of damages for canal seepage.

Furthermore, no authority has been cited for application of the statute to tree damage resulting from canal seepage. Instead, the Seals offer the novel argument that "[t]he girdling of the trees from the phytophthora was as much a trespass as the girdling of a tree by a human hand" and "there should be no distinction drawn between trees damaged by the trespass of an individual with a chain saw, or by the trespass of a thing under a person's control." In support of this theory, they claim that *Penney Farms, Inc. v. Heffron*, 24 Wn. App. 150, 599 P.2d 536 (1979) and *Sparks v. Douglas Cy.*, 39 Wn. App. 714, 695 P.2d 588 (1985) stand for the proposition that RCW 64.12.030 does not require actual cutting of a tree and damages caused by

seepage is akin to "injury" within the meaning of the statute. Neither case is applicable here. In *Sparks* the damage to the trees was done by actual cutting. In *Penney Farms* the only issue before the court was the measure of damages for the loss or destruction of cherry trees.

With respect to the claim there is a common law trespass, the Seals attempt to establish intentional trespass under the elements set forth in *Zimmer v. Stephenson, supra* at 483, wherein the court adopted Restatement of Torts § 165, at 390 (1934):

> One who recklessly or negligently, or as a result of an extra hazardous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor thereof or to a thing or a third person in whose security the possessor has a legally protected interest.

The Seals rely on the expansion of this definition in *Bradley v. American Smelting & Ref. Co., supra* at 691, where the court adopted the following elements of *intentional* trespass by airborne pollutants: (1) an invasion affecting an interest in the exclusive possession of property; (2) an intentional doing of the act which results in the invasion; (3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and (4) substantial damages to the res. With regard to "intent", the court in *Bradley* adopted Restatement (Second) of Torts § 8A (1965) and stated:

> The word "intent" is used . . . to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.

and we find in comment *b*, at 15:

> Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.

*Bradley,* at 682.

■ We disagree with the Seals' assertion under *Zimmer* and *Bradley* that the District was culpable of intentional trespass because it knew the canal was flooding their property and failure to repair such damage would cause extensive harm to their orchard. As discussed, the record discloses affirmative measures taken by the District to both prevent and alleviate seepage problems on the Seals' property. There has been no showing by the Seals to equate the District's conduct with a desire to allow water to seep into the orchard. The evidence indicates only negligence on the part of the District. Therefore, the Seals' claim of intentional trespass must fail.

In addition our courts have adopted a rule of negligence with regard to damage resulting from the maintenance, construction or operation of irrigation works. In *Holland v. Columbia Irrig. Dist.,* 75 Wn.2d 302, 305, 450 P.2d 488 (1969), the court stated:

> The liability of owners of irrigation works is stated in 30 Am. Jur. *Irrigation* § 86 (1958):
> [I]t is the prevailing view that the proprietor of an irrigation conduit is not an insurer against damage which may result from its operation, but is liable only in case he has been negligent in the construction, maintenance, or operation of his irrigation works . . . .
> We adopted this view in *Longmire v. Yelm Irrigation Dist.,* 114 Wash. 619, 195 Pac. 1014 (1921).

*See Benton City v. Adrian,* 50 Wn. App. 330, 335, 748 P.2d 679 (1988). Therefore, we decline to adopt the contrary view of the Oregon Supreme Court in *Reter v. Talent Irrig. Dist.,* 258 Or. 140, 482 P.2d 170 (1971), as urged by the Seals.

Second, the Seals contend the court erred in refusing to give their proposed instructions 17 and 18 that seepage from the canal is a nuisance under RCW 7.48. They cite no authority for application of these statutes to cases involving seepage from an irrigation canal. The District relies on

*Longmire v. Yelm Irrig. Dist.*, 114 Wash. 619, 195 P. 1014 (1921) and *Robillard v. Selah–Moxee Irrig. Dist.*, 54 Wn.2d 582, 343 P.2d 565 (1959) to argue that canal seepage is not a nuisance. The Seals reply that *Robillard* does not address the issue of whether canal seepage can constitute a nuisance; and further, through its distinctions between trespass and nuisance, *Bradley v. American Smelting & Ref. Co., supra,* has effectively overruled *Robillard.* We disagree.

 Nuisance is a statutory cause of action defined in RCW 7.48.120:

> Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which . . . either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

RCW 7.48.010 further defines actionable nuisance as "an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance and the subject of an action for damages and other and further relief." RCW 7.48.160 states: "Nothing which is done or maintained under the express authority of a statute, can be deemed a nuisance."[1] These statutes are based on the general principle that a landowner is not permitted to use land so as to interfere unreasonably with another's use and enjoyment of his land. The crux of the matter appears to be reasonableness. Admittedly, the term is a flexible one. The fundamental inquiry is whether the use of certain land can be considered reasonable in relation to all the facts and surrounding circumstances. *Highline Sch. Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 548 P.2d 1085 (1976); *Riblet v. Spokane–Portland Cement Co.,* 41 Wn.2d 249, 254, 248 P.2d 380 (1952). The

---

[1]This irrigation district exists by virtue of a statute. RCW 87.03.

character of the neighborhood in which a particular business is located is an additional factor to consider in determining the reasonableness of the operation. *Morin v. Johnson,* 49 Wn.2d 275, 281, 300 P.2d 569 (1956).

*Robillard v. Selah–Moxee Irrig. Dist., supra,* appears to be the only Washington case concerned with whether unintentionally caused seepage from an irrigation canal constitutes a nuisance. There, plaintiff's crops were damaged as a result of seepage from one of two possible sources— defendant's canal and another nearby canal. The defendant requested an instruction regarding persons contributing to a nuisance. The Supreme Court stated: "We are not concerned with a nuisance in the instant case." *Robillard,* at 583–84. The Seals' assertion that *Bradley v. American Smelting & Ref. Co., supra,* effectively overrules *Robillard* must fail. In *Bradley* the court held that theories of trespass and nuisance are not inconsistent, that they may apply concurrently, and that the injured party may proceed under both theories when the elements of both actions are present. *Bradley,* at 689. That holding does not disturb *Robillard* and the other decisions applying the negligence standard to damage resulting from the maintenance or operation of irrigation works. *Holland v. Columbia Irrig. Dist., supra* at 305; *Longmire v. Yelm Irrig. Dist., supra* at 620–22; *Benton City v. Adrian, supra* at 335. There was no error in refusing the requested instructions.

Third, the Seals contend the court erred in refusing to give their proposed instructions 19, 20, and 21 that flooding of the orchard caused by seepage constitutes a taking of property without just compensation in violation of article 1, section 16 (amendment 9) of our constitution. They cite several Washington cases in support of their argument, but none are applicable.[2]

---

[2]The following cases are distinguishable because each involved an affirmative act of construction or diversion of water which directly resulted in damage to property: *Colella v. King Cy.,* 72 Wn.2d 386, 433 P.2d 154 (1967), where water was *diverted* into a ravine washing out plaintiff's dam, resulting in flooding; *Harkoff v. Whatcom Cy.,* 40 Wn.2d 147, 241 P.2d 932 (1952), county *augmented* capacity of

Article 1, section 16 of our constitution provides in part: "No private property shall be taken or damaged for public or private use without just compensation having been first made, . . ." Pursuant to RCW 87.03.140, the board of an irrigation district has authority to condemn the property necessary for the construction, use, and maintenance of canals. The statute also declares the condemnation of such property to be a public use.

No Washington cases have been cited that discuss whether seepage from an irrigation district canal constitutes a taking. However, *Songstad v. Metropolitan Seattle,* 2 Wn. App. 680, 472 P.2d 574 (1970) is instructive. There, Metropolitan Seattle acquired a "slope easement" allowing it to pile dirt on plaintiffs' property while constructing the fill to support a sewage disposal line. Rock and earth washed onto the property, clogging drainage, resulting in flooding which delayed plaintiffs' construction project and cost them profits and additional expenses. The court refused to instruct the jury on trespass and inverse condemnation, but gave a negligence instruction. On appeal the court relied on *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 P. 645, 52 A.L.R. 625 (1927), *Boitano v. Snohomish Cy.,* 11 Wn.2d 664, 120 P.2d 490 (1941), and *Olson v. King Cy.,* 71 Wn.2d 279, 428 P.2d 562, 24 A.L.R.3d 950 (1967) to conclude there was a tortious injury to property, but no taking because the alleged damages were neither

---

ditches and made or allowed changes in location of culverts resulting in increased flow of drainage water; *Clifford v. State,* 20 Wn.2d 527, 148 P.2d 302 (1944), *reversing* of natural drainage resulted in flooding; *Boitano v. Snohomish Cy.,* 11 Wn.2d 664, 120 P.2d 490 (1941), where county in operating a gravel pit for public use uncovered large spring and *constructed a channel* to rid its premises of the water resulting in the flooding; *Ulery v. Kitsap Cy.,* 188 Wash. 519, 63 P.2d 352 (1936), *construction* of new highway with inadequate drainage resulted in flooding; *Conger v. Pierce Cy.,* 116 Wash. 27, 198 P. 377, 18 A.L.R. 393 (1921), *elimination of bend* in Puyallup River resulted in flooding; *Rohsnagel v. Northern Pac. Ry.,* 69 Wash. 243, 124 P. 900 (1912), *construction* of a culvert *directed* increased water onto plaintiff's property; *Wendel v. Spokane Cy.,* 27 Wash. 121, 67 P. 576 (1902), water *drained* from a lake collected on plaintiff's land; *B & W Constr., Inc. v. Lacey,* 19 Wn. App. 220, 577 P.2d 583 (1978), where damages resulted from *construction of* storm sewer system.

contemplated in the plan of construction nor necessarily incident to the construction work performed. *Songstad,* at 682–85. The court also noted the constitution was never intended to apply to consequential damages neither anticipated in, nor a part of, the plan of a public work, or to damages resulting to private property from the negligent or wrongful use of public property. *Boitano,* at 674–75; *Jorguson v. Seattle,* 80 Wash. 126, 130–31, 141 P. 334 (1914); *Songstad,* at 684.

Similarly, in *Olson v. King Cy., supra,* the County failed to protect a dirt fill from water erosion, resulting in the casting of debris onto plaintiff's property. The court determined the inundating of the property was neither contemplated by the plan of work nor a necessary incident to the building or maintenance of the road and stated the damages were a mere temporary interference with a private property right that could have been avoided by due care. *Olson,* at 284–85.

█ The damage here was obviously not contemplated by the plan of construction, as the orchard was planted several decades after the canal was built. Various measures were taken by the District to alleviate seepage and excess water problems; and as the jury verdict indicates, the District negligently performed these activities. Therefore, although permanent damage may have resulted to the Seals' cherry trees, a negligence standard is appropriate and the court properly refused to instruct the jury on the constitutional taking issue. This result is consistent with *Holland v. Columbia Irrig. Dist., supra.*

Finally, the Seals contend the court erred in instructing the jury on contributory negligence rather than giving the following proposed instruction:

The burden is not on a landowner to endeavor to prevent or lessen damages being caused by a willful trespasser. A landowner need not protect against further damage, nor is he responsible to do repair to the land to lessen his damages.

Since the District was not a willful trespasser, the instruction was properly refused.

The Seals do not specifically assign error to the inclusion of the contributory negligence instruction, but even treated as such the record contains ample evidence that the Seals' negligence contributed to problems in their orchard. The District's experts testified the orchard required closer attention to appropriate pruning, fertilization and irrigation practices. Consulting agronomist Donald Jameson testified it appeared water had been withheld in some areas and applied to more productive trees. He did not find a pattern of declining trees atop wet soil. Another consultant, Harper Grimes, found the rill irrigation inconsistent and concluded the trees were not suffering from excess water. Mr. Grimes noted trees were suffering from viruses and experiencing leaf roll and heavy stress from moisture that he did not believe was caused by subterranean water. He also found the orchard to be very dry—such that lack of snow cover in the winter could cause root injury.

Additionally, in 1986, after the filing of this action, the Seals constructed dams in water diversion ditches resulting in retention of water on the orchard. Mr. Seal testified the purpose of this was "to know exactly where [the] water was coming from, and how much." He conducted tests with Dr. Olaf Ribeiro, unplugging the dams which lowered the water level in test holes designed to monitor groundwater levels in the orchard. The jury could have determined that water retained by this diking caused damage to the orchard in 1986 and/or compounded existing problems caused either by seepage from the District's canal or the Seals' farming practices. The expert testimony indicates cherry trees are highly susceptible to water stress, yet immediate or specific reactions are difficult to predict. There was a consensus even among the Seals' experts that survival of the orchard depended on reduction of the water table and proper drainage. Additionally, Jim McBride, a consultant with considerable experience in the operation of cherry orchards, testified he saw "severe water stress from too much water

12

on one side of the orchard, and the very opposite on the other side. Two very extreme conditions in a short . . . area."

The court properly instructed on a negligence standard. Where there is sufficient circumstantial evidence presented to support the defense of contributory negligence, that theory may be submitted to the jury. *Zukowsky v. Brown*, 79 Wn.2d 586, 488 P.2d 269 (1971); *Stuart v. Consolidated Foods Corp.*, 6 Wn. App. 841, 496 P.2d 527, *review denied*, 81 Wn.2d 1002 (1972). There was sufficient evidence here to present the District's negligence and the Seals' negligence to the jury. It resolved the issues and its verdict will not be disturbed.

Affirmed.

MCINTURFF, C.J., and MUNSON, J., concur.

Review denied by Supreme Court July 5, 1988.