442

[No. 28730-7-II. Division Two. September 16, 2003.]

JAMES D. DICKGIESER, ET AL., *Appellants*, v. THE STATE OF WASHINGTON, *Respondent*.

*Jay A. Goldstein*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Mark C. Jobson, Assistant*, for respondent.

ARMSTRONG, J. — The Dickgiesers[1] appeal a summary judgment dismissal of their inverse condemnation claim against the Department of Natural Resources (Department) for flood damage to the Dickgiesers' property. A stream runs through the parties' adjoining land. After the Department logged its land, the stream overflowed its banks during heavy rains, flooding the Dickgiesers' land. The principal issue on appeal is whether the Department's logging and improvements to the streambed on the Dickgiesers' property amount to a public use of either the Department's property or the Dickgiesers' property. If not, the Department is not liable for inverse condemnation. We agree with the trial court that the Department's actions were not a public use and, accordingly, affirm.

## FACTS

The Dickgiesers and the Department of Natural Resources own neighboring property in Jefferson County. A

---

[1] The appellants James, Milo, and Joan Dickgieser, and Sherrie Shold are collectively called Dickgiesers.

stream runs through the Department's property and then through the Dickgiesers' property. When the Dickgiesers learned that the Department planned to log its property, they expressed concern that the logging would cause the stream to flood. To help resolve this concern, and to obtain an easement across the Dickgiesers' land, the Department agreed to construct some safeguards to the streambed on the Dickgiesers' land.

The Department did some bank protection work and installed a larger culvert in the stream; the Dickgiesers allege that the Department's work was done incorrectly and that it did not do all it promised. The Department then logged or allowed logging on its land. During the next rainy season, the stream flooded and damaged or destroyed three homes on the Dickgiesers' property. The Dickgiesers' experts predict repeated, permanent, and chronic flooding as a result of the logging.

The Dickgiesers sued the Department for negligence, nuisance, inverse condemnation, and waste. Because the statute of limitations had run on the negligence and nuisance claims, the parties stipulated to dismissing those claims.

The trial court found no support for the Dickgiesers' waste claim. And it found no inverse condemnation because the Department's logging was not a public use. The court agreed with the Department that it was acting in a proprietary capacity, not a sovereign capacity, when it logged its land. Accordingly, the court dismissed the Dickgiesers' claims.

## ANALYSIS

On appeal, the Dickgiesers contend that (1) the Department's logging was a public use because statutes direct the state to log as a way to fund schools, (2) the logging caused permanent damage to their land and homes, (3) the logging and the resultant flooding have amounted to inverse con-

demnation of their property, and (4) there are genuine issues of material fact. The Department responds that it did not artificially collect the water that flooded the Dickgiesers' land and that its actions were not a taking because they were not done for public use. The Dickgiesers reply that the Department artificially collected water by installing the culvert and other safeguards and that logging state land constituted a public use.

We review summary judgment decisions de novo, viewing the facts in the light most favorable to the nonmoving party, the Dickgiesers. *Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co.*, 142 Wn.2d 431, 434-35, 13 P.3d 622 (2000), *cert. denied*, 532 U.S. 1002 (2001); *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

Inverse Condemnation

█ The United States and Washington constitutions prohibit the taking of private property for public use without just compensation. U.S. CONST. amend. V; WASH. CONST. art. I, § 16. The government takes land when it " 'invades or interferes with the use and enjoyment of property, and its market value declines as a result.' " *Pruitt v. Douglas County*, 116 Wn. App. 547, 559, 66 P.3d 1111 (2003) (quoting *Gaines v. Pierce County*, 66 Wn. App. 715, 725, 834 P.2d 631 (1992)).

██ When the government takes a landowner's property without exercising its powers of eminent domain, the landowner has a cause of action for inverse condemnation. *Phillips v. King County*, 136 Wn.2d 946, 957, 968 P.2d 871 (1998). The landowner must establish "(1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings." *Phillips*, 136 Wn.2d at 957. The Department denies that it has taken

or damaged the Dickgiesers' property and denies that the logging was for public use.

## A. Public Use

The Dickgiesers contend that because Washington's constitution and statutes require the Department to manage public lands, and because the State must use funds from logging public land to maintain its public schools, logging is a public use. RCW 77.110.030 (State manages state resources); RCW 76.16.010 (State may acquire property or use roads to access state timber).

■ Washington's constitution provides that "[p]rivate property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. . . . [T]he question whether the contemplated use be really public shall be a judicial question." WASH. CONST. art I, § 16. A beneficial use is not necessarily a public use. *Manufactured Hous. Cmtys. of Wash. v. State*, 142 Wn.2d 347, 372, 13 P.3d 183 (2000). " '[T]he use under consideration must be either a use by the public, or by some agency which is quasi public, and not simply a use which may incidentally or indirectly promote the public interest or general prosperity of the state.' " *Manufactured Hous.*, 142 Wn.2d at 372-73 (quoting *Healy Lumber Co. v. Morris*, 33 Wash. 490, 509, 74 P. 681 (1903)).

Uses that are public include operation of a gravel pit on state lands, when the gravel was used to construct and maintain public highways, *Boitano v. Snohomish County*, 11 Wn.2d 664, 120 P.2d 490 (1941); public transportation, *State ex. rel. Devonshire v. Superior Court*, 70 Wn.2d 630, 424 P.2d 913 (1967); public utilities and the production of hydroelectric power, *State ex. rel. N.W. Elec. Co. v. Superior Court*, 28 Wn.2d 476, 183 P.2d 802 (1947), *City of Tacoma v. Humble Oil & Ref. Co.*, 57 Wn.2d 257, 258, 356 P.2d 586 (1960); appropriation of water and facilities to generate electrical power to sell to public, *Pub. Util. Dist. No. 1 of Chelan County v. Wash. Water Power Co.*, 43 Wn.2d 639,

262 P.2d 976 (1953); and airport operation, *Anderson v. Port of Seattle*, 49 Wn.2d 528, 304 P.2d 705 (1956). Washington courts have not considered whether logging state land to provide money for public schools is a public use.

In *Manufactured Housing*, the court found that maintaining housing for low income and elderly people provided public benefit, but it was not a "public use." *Manufactured Hous.*, 142 Wn.2d at 371-72. Similarly, the court found that the Westlake Project in Seattle, the goals of which were retailing and public space, was in the public interest and had a beneficial use, but was not a public use. *In re City of Seattle*, 96 Wn.2d 616, 625-28, 638 P.2d 549 (1981).

█ Likewise, logging state land to fund public schools certainly benefits the public. But unlike the cases involving public utilities and transportation, the Department's activities here were not done for a public use. The logs themselves were not put to public use; the land was not used for a public use; the stream revisions were not for a public use (for example, a road or park). Rather, like *Manufactured Housing* and *City of Seattle*, the logging provided a public benefit but was not a public use.

Viewed another way, the Department logged this property to produce income and manage its assets. It did not log the property to create an area for public use. Thus, the logging was not a public use. *See, e.g., Decker v. State*, 188 Wash. 222, 227-28, 62 P.2d 35 (1936) (taking property to operate and maintain water supply to state hospital was public use). If merely by using logging income to support public schools makes logging a public use, it is difficult to imagine what government activity would not involve a public use.

The Dickgiesers rely on *Hoover, Boitano, Rains,* and *Orion* for support of their arguments. But these cases demonstrate why the Department's action is not a taking. In *Hoover*, the taking was the county's building of a road and a culvert to help channel water from the road. *Hoover v. Pierce County*, 79 Wn. App. 427, 432-33, 903 P.2d 464 (1995). In *Boitano*, the taking arose from the county's

operation of a gravel pit from which it obtained material it used to build and maintain public highways. *Boitano*, 11 Wn.2d at 665. *Orion* and *Rains* are regulatory takings cases. In *Rains*, the flooding was an act of nature and there was no public use. *Rains v. Dep't of Fisheries*, 89 Wn.2d 740, 746, 575 P.2d 1057 (1978). And *Orion* involved tidelands, so the public trust doctrine applied. *Orion Corp. v. State*, 109 Wn.2d 621, 747 P.2d 1062 (1987).

Unlike *Hoover* and *Boitano,* the Department's flood protection measures here were not connected to a public use. The Dickgiesers are correct that all three cases involve the government channeling water. But the government did so in *Hoover* and *Boitano* in connection with the construction or maintenance of public roads. In contrast, the Department channeled water here, if at all, in connection with the logging of its land. This was not a public use.

At oral argument, the Dickgiesers also drew our attention to *Phillips v. King County*, 136 Wn.2d 946, 968 P.2d 871 (1998). There, the court found a public use when the county let a developer build a drainage system on public land that conveyed stormwater onto neighboring property. The county was using its own land for flood drainage purposes. In contrast here, the Department merely logged its own land; the drainage system it constructed was located on the Dickgeisers' land. *Phillips* holds the State liable for using state-owned land to collect and channel floodwater. *Phillips*, 136 Wn.2d at 958, 967-68. The Department did not use its land to do so here.

A cognizable takings claim requires a public use. Such a public use is absent here; thus, no taking occurred.

## B. Artificially Collecting Water

The parties also disagree about whether the Department artificially collected, channeled, or diverted surface water onto the Dickgiesers' property. Because we find that there was no public use, we need not discuss this issue.

We affirm the summary judgment order in favor of the Department.

QUINN-BRINTNALL, A.C.J., and MORGAN, J., concur.

Review granted at 151 Wn.2d 1024 (2004).